■ Donald Zimmerman, an Infant, by His Father and Natural Guardian, Edward Zimmerman, et al., Respondents, v Nassau Hospital et al., Appellants, et al., Defendant.—In a medical malpractice action, defendants Nassau Hospital and Leonard L. Ostreich separately appeal from so much of (1) an order of the Supreme Court, Nassau County, dated December 13, 1979, as denied their motions to compel plaintiffs to provide them with authorizations to obtain certain medical records, and (2) a further order of the same court, dated February 20, 1980, as denied their motions to renew or reconsider the original determination. Order dated December 13, 1979 reversed insofar as appealed from, and motions granted. Plaintiff shall furnish the authorizations within 20 days after service upon them of a copy of the order to be made hereon together with notice of entry thereof. Appeal from the order dated February 20, 1980 dismissed. Appellants are awarded one bill of $50 costs and disbursements payable by plaintiffs. The infant plaintiff was treated by appellants shortly after his premature birth in 1962. As part of their care of the infant, they administered oxygen therapy which allegedly resulted in a condition of retrolental fibroplasia, a condition of the eye resulting in legal blindness. Soon after this time, and in the first year of the infant's life, his parents contacted an attorney who, in turn, referred them to an ophthalmologist, Dr. Gerald Kara. Dr. Kara conducted two examinations of the infant, including one performed under anesthesia because of the pain associated with such an examination. Dr. Kara also prescribed eyeglasses for the infant. It should be noted that the attorney was present during both visits to Dr. Kara; however, no litigation was commenced at the time. In fact, this action was not begun until 1974, some 12 years later, after the plaintiffs had moved to California and sought and retained counsel in that State. The New York attorney had never been formally retained by the Zimmermans. Appellants now seek to obtain the medical records of Dr. Kara and of the New York Eye & Ear Infirmary, where the procedure was performed. In the order of December 13, 1979, Special Term denied the appellants' applications. This was error. The basis of Special Term's conclusion is that the materials sought by appellants constitute either an attorney's work product or material prepared for litigation and, as such, enjoy immunity from disclosure by virtue of CPLR 3101 (subds [c], [d]). This status is conferred by Special Term upon the records in question by virtue of the involvement of the attorney in New York. At the outset, we note that the burden of demonstrating that particular records are immune from discovery is on the party asserting such immunity. This burden is so placed by virtue of the strong policy in favor of full disclosure. (Koump v Smith, 25 NY2d 287, 294.) Thus, in the present case it was incumbent upon the plaintiffs to prove that the disputed records should be held immune from discovery, and the mere assertion that they

constitute an attorney's work product or material prepared for litigation will not suffice. (See *Chemical Bank v National Union Fire Ins. Co. of Pittsburgh, Pa.,* 70 AD2d 837.) The "work product" of an attorney is a concept which has been very narrowly construed. *(Chemical Bank v National Union Fire Ins. Co. of Pittsburgh, Pa., supra.)* With reference to an attorney's dealings with an expert, it is only the information and observations disclosed *by the attorney* and conveyed to the expert which are subject to exclusion. *(People v Edney,* 39 NY2d 620, 625.) Thus, Dr. Kara's report cannot qualify as an attorney's work product. Nor may the records sought by defendants be considered "material prepared for litigation" within the purview of CPLR 3101 (subd [d]). On the facts before us, we conclude that the Zimmermans' primary motivation in bringing the infant plaintiff to Dr. Kara was not for consultation with respect to litigation, but rather was for a thorough examination, diagnosis and treatment. Although the prospect of litigation may have been cogent at the time, such multimotivated reports do not warrant immunity if litigation is but one of the motives. (See *Chemical Bank v National Union Fire Ins. Co. of Pittsburgh, Pa., supra.)* We therefore conclude that the information sought by appellants constitutes neither an attorney's work product nor material prepared for litigation. However, even if we had construed the documents as material prepared for litigation, we would have held that the material is still subject to discovery pursuant to the exception embodied in CPLR 3101 (subd [d]). Since the parents of the infant plaintiff will not permit the complete examination of him by appellants' experts, the tests performed by Dr. Kara cannot be duplicated. As we held in *Binke v Goodyear Tire & Rubber Co.* (55 AD2d 632), where a test can no longer be duplicated, a withholding of information derived therefrom will result in injustice and hardship and, hence, such information is discoverable. Accordingly, the order dated December 13, 1979 must be reversed insofar as appealed from and plaintiffs are directed to provide appellants with proper authorizations for the release of medical records in the possession of Dr. Kara and the New York Eye & Ear Infirmary. Titone, J. P., Mangano, Gibbons and Martuscello, JJ., concur.