OPINION OF THE COURT
Ira B. Warshawsky, J.
Background
Familiarity with the facts of these matters is assumed and only relevant facts will be restated when necessary.
Counsel’s Instructions to Nonparty Witness Not to Answer Questions in Dispute Based on the Assertion of Privilege
During the deposition phase of discovery in the above-referenced consolidated matters, Delta Financial Corporation (DFC) served a subpoena upon nonparty Stonehill Institutional Partners, L.P On December 7, 2006, Stonehill through Wayne Teetsel appeared for the deposition at the office for counsel for Stonehill, Orans, Elsen & Lupert, LLE Also in attendance for the deposition were Christopher A. Byrne, Esq., counsel for James Morrison, Delta Funding Residual Exchange Company, LLC and its management company Delta Funding Residual Management, Inc. (collectively hereinafter known as the LLC), as well as counsel for KPMG, Mark Kornfeld, Esq., and counsel for DFC, Eugene R. Licker. During the deposition, Mr. Teetsel refused, on the advice of his counsel and counsel for the LLC, to answer two questions posed to him by Mr. Licker (which are *310 defined below) that involve communications among members of the LLC’s litigation committee.*
The first objection on the ground of privilege and instruction not to answer was set forth by Messrs. Brown and Byrne in response to a question by Mr. Licker regarding exhibit Teetsel 22, a June 15, 2004 e-mail from James Morrison to Mr. Teetsel and Harrison Bubrowsky regarding a financial update of the LLC. On behalf of the LLC, Mr. Byrne objected to the question to the extent that it was seeking litigation committee-related information (see deposition transcript at 176). The question posed by Mr. Licker asked: “What about Teetsel 22 gives you information specifically about the resources available to pursue the litigation as opposed to the resources of the LLC generally which any member would be interested in?” (Hereinafter known as question 1.)
After counsel for the LLC expressed his objection and instructed the witness not to answer the question, a colloquy between Mr. Byrne and Mr. Licker was held discussing the assertion of the privilege. It was thereafter agreed among counsel that prior to calling the Discovery Referee, Michael Cardello III, Esq., to rule on whether the objection was proper and the instruction not to answer the question appropriate, it was agreed that Mr. Licker would continue the deposition and a call to Mr. Cardello would occur either at the conclusion of the deposition or when another dispute arose.
Subsequent to the question 1 issue, counsel for DEC continued the deposition by asking a line of questioning with regard to communications among the members of the litigation committee, specifically regarding a meeting of the litigation committee during the summer of 2006. Mr. Licker asked Mr. Teetsel who attended the meeting and Mr. Teetsel responded: “Jim Morrison and myself.” After a few other additional questions by Mr. Licker, which were answered by the witness, Mr. Licker asked a question (see deposition transcript at 264) concerning the meeting between Mr. Morrison and Mr. Teetsel during the summer of 2006: “What did he say to you and what did you say to him?” (hereinafter known as question 2) (collectively, question 1 and question 2 are sometimes referred to as the questions in dispute). Thereafter, Messrs. Brown and Byrne immediately *311 objected to question 2. The witness stated that he was not going to answer question 2 and Mr. Brown instructed his client not to answer question 2.
The questions in dispute were presented to the Discovery Referee, Mr. Cardello, via telephone conference call for a ruling and a discussion was held on the record with Mr. Cardello and counsel for the parties and nonparty Stonehill. It was determined by Mr. Cardello that letter briefs would be submitted by counsel for the LLC, KPMG, DFC and nonparty Stonehill with regard to the assertion of privilege and instruction to not answer relating to the questions in dispute. Considering the paucity of decisions in the area of litigation committees and the assertion of privilege, the court determined that this ruling should come from the bench and not the Discovery Referee, Mr. Cardello.
LLC’s Argument in Support of the Instruction Not to Answer the Questions in Dispute
In its letter brief, the LLC argues that the instruction not to answer based on privilege was properly given with regard to the questions in dispute. According to the LLC, the central issue is whether communications among litigation committee members outside the direct presence of an attorney are protected. Counsel for the LLC claims that the principal that applies to this issue is settled law as reflected in the federal case of Bank Brussels Lambert v Credit Lyonnais (Suisse) S.A. (160 FRD 437 [SD NY 1995]). According to the LLC, the court in Bank Brussels Lambert stated that “the privilege protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation . . . [S]ince the decision-making power of the corporate client may be diffused among several employees, the dissemination of confidential communications to such persons does not defeat the privilege.” (Id. at 442.)
The LLC claims that the questions in dispute are similar in that each involve a situation where an attorney might either not be physically present or the attorney work product privilege may not specifically be mentioned in the particular written document, but the context is one which deals with communications regarding litigation strategy, litigation impressions and/or other litigation considerations of the litigation committee.
The LLC argues that the facts elicited in the deposition demonstrated an integral relationship between the legal strategies developed by the work of the LLC’s litigation committee and certain documents used, analyzed, and commented upon by the litigation committee members, even if those documents them *312 selves were not physically labeled “attorney work product” or “attorney-client privileged” or were always discussed in the presence of an attorney. The LLC contends that the attorney-client privilege and work-product privilege that attach in this context broadly apply to communications made for the purpose of facilitating the rendition of legal advice or services in the course of a professional relationship and there is no issue regarding the involvement of both ljgal counsel and LLC financial matters in the work of the litigation committee as pertaining to legal strategy, legal impressions, etc., or in the purpose of the litigation committee’s work as limited to litigation matters involving DFC.
Accordingly, counsel for the LLC contends that the instructions to Mr. Teetsel not to answer the questions in dispute were proper, based upon privilege, and should be upheld.
Stonehill’s Argument in Support of the Instruction Not to Answer the Questions in Dispute
Mr. Brown, counsel for Stonehill, argues that the instruction to Mr. Teetsel not to answer the questions in dispute should be upheld in that answers would involve the disclosure of privileged information and permit “an unprecedented violation of one of the bedrock legal protections in American law” (see Stonehill’s letter brief at 5). Mr. Brown claims that DFC and KPMG are seeking to discover communications and discussions of the litigation committee established for the sole purpose of conducting this litigation and these communications include discussions of attorney advice, preparation for conversations with attorneys, and strategic decisions about the course of the litigation. Counsel for Stonehill claims that New York courts do not permit this type of discovery and neither should this court.
Counsel for Stonehill claims that the attorney-client privilege is properly invoked when certain conditions are fulfilled and that the facts of this case with regard to the questions asked by counsel to DFC satisfy those conditions. Counsel for Stonehill states that, under well-established law, any conversations among members of the litigation committee, especially those involving confidential attorney communications or work product, are privileged. Mr. Brown further argues that conversations about funding this case to the extent they involve attorney advice or work product are also fully protected from discovery.
Counsel for Stonehill also cites the Bank Brussels Lambert v Credit Lyonnais (Suisse) S.A. (160 FRD 437 [SD NY 1995]) decision in support of his position that the instruction not to *313 answer the questions in dispute should be upheld. Mr. Brown, on behalf of Stonehill, argues that this protection is clearly applicable to the litigation committee in this matter wherein the committee members shared legal information with one another for the purpose of pursuing a shared goal of the LLC. In addition, Stonehill contends that the ability of the LLC to claim privilege is entirely consistent with this court’s prior conclusions in earlier evidentiary decisions.
Furthermore, counsel for Stonehill claims that several courts have tackled the issue of privilege in the context of litigation committees, which typically involve shareholder derivative claims in which the shareholders seek information about the working of litigation committees. According to Stonehill, those decisions stand for the proposition that conversations, minutes, and documents of a litigation committee are protected unless the privilege has been waived or the court is attempting to apply the business judgment rule to determine whether the litigation committee performed its duties in good faith, with independence and reason. (See Medinol, Ltd. v Boston Scientific Corp., 214 FRD 113 [SD NY 2002] in support of that proposition.)
Accordingly, counsel for Stonehill argues that the instructions to Mr. Teetsel not to answer the questions in dispute were proper, based on privilege, and should be upheld.
DFC’s Opposition to the Assertion of Privilege and Instruction Not to Answer
Not surprisingly, DFC states that counsel for the LLC and nonparty Stonehill have not and cannot meet their burden to sustain the instruction not to answer the questions in dispute on the ground of privilege. Counsel for DFC contends that the assertion of privilege and instruction not to answer appropriate questions is only an attempt by the LLC to bar full and fair disclosure under the guise of privilege and urges that those efforts be rejected.
Specifically, DFC contends that the LLC and Stonehill bear the burden of establishing the privilege by competent evidence, which, in DFC’s view, has not been met. Counsel for DFC argues that the burden cannot be satisfied by counsel’s conclusory allegations of privilege. DFC claims that the questions posed to the witness, Mr. Teetsel, do not seek information or communications protected by the attorney-client privilege and that there is no legal authority for the proposition that any considerations or thought processes by the litigation committee regarding the commencement and/or conduct of litigation are privileged as maintained by the LLC and Stonehill.
*314 DFC is, in fact, clear in that it does not maintain that the communication of advice sought from or provided by counsel is discoverable. DFC states that where the record is clear that a conversation with counsel is the subject of a communication between nonlawyers, that communication is protected even though no lawyer is present. However, where there is no evidence that the nonlawyers are discussing privileged information, the conversation between them is discoverable. DFC claims that to the extent the communications among the LLC litigation committee concern their own opinions regarding litigation strategy as opposed to the opinions of counsel, those opinions are not protected by the attorney-client privilege or any other recognized privilege. As such, DFC argues that conversations between litigation committee members, outside the presence of counsel, which do not reveal the advice of counsel, are not protected by the attorney-client privilege.
DFC also cites Bank Brussels Lambert v Credit Lyonnais (Suisse) S.A. (160 FRD 437 [SD NY 1995]) for the proposition that communications among nonlawyers (who are not acting as agents of counsel) are not protected by the attorney-client privilege or any other judicially recognized privilege, even if those communications concern nonlawyers’ legal opinions. Only communications between the client and attorney are protected by privilege, not discussions with nonlawyers concerning the same subject matter. (Id.)
KPMG’s Opposition to the Assertion of Privilege and Instruction Not to Answer
Counsel for KPMG supports the position of DFC with regard to the objection to the claim of privilege and instruction not to answer with respect to the questions in dispute. KPMG contends that an improper instruction not to answer was given to the witness in connection with the questioning from DFC’s counsel. KPMG argues there is nothing in the questions in dispute that seeks privileged information from Mr. Teetsel, and, therefore, the direction not to answer on the basis of privilege is improper.
The gravamen of KPMG’s argument is that communications between Mr. Morrison and Mr. Teetsel, absent the presence of counsel and/or legal advice being communicated by an attorney, are not protected, nor are communications protected between Mr. Morrison and Mr. Teetsel themselves, which discuss ideas for strategy for litigation that do not reflect attorney-client communications. KPMG adds that there is a heavy burden on the LLC and Stonehill to demonstrate why a specific conversa *315 tion is privileged to justify an instruction not to answer. KPMG argues that the LLC and Stonehill have not and cannot meet that burden.
KPMG further contends that to the extent the LLC and/or Stonehill are suggesting that there is an “across the board” or “blanket privilege” for every communication of the litigation committee of the LLC, KPMG argues that there is no legal basis or support for such an argument. KPMG claims that it must be allowed to fully explore all communications between Mr. Morrison and the other members of the litigation committee, who made substantial purchases of their LLC interests in the aftermarket contemporaneous with litigation between LLC and DFC, so as not to be prejudiced when defending the lawsuit. KPMG argues that there is no legal recognizable litigation committee privilege under New York law (or Delaware, where the LLC was formed).
Discussion
The CPLR directs that there shall be “full disclosure of all matter material and necessary in the prosecution or defense of an action.” (CPLR 3101 [a].) The test is one of usefulness and reason. (See Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406 [1968].) Section 3101 (a) embodies the policy determination that liberal discovery encourages fair and effective resolution of disputes on the merits, minimizing the possibility for ambush and unfair surprise. (See Weinstein-Korn-Miller, NY Civ Prac ¶¶ 3101.01-3101.03 [2d ed].)
The CPLR establishes three categories of protected materials: privileged matter, which is afforded absolute immunity from discovery (CPLR 3101 [b]); attorney’s work product, which is also afforded absolute immunity (CPLR 3101 [c]); and trial preparation material, which is subject to disclosure only on a showing of substantial need and undue hardship in obtaining substantially equivalent material by other means (CPLR 3101 [d] [2]; see Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371 [1991]). Obvious tension exists between the policy favoring full disclosure and a policy permitting parties to withhold relevant information. (See Spectrum Sys. at 377.) Consequently, the burden of establishing any right to protection is on the parties asserting it; the protection claimed must be narrowly construed; and its application must be consistent with the purposes underlying immunity. (Id.; Matter of Priest v Hennessy, 51 NY2d 62, 69 [1980]; Matter of Jacqueline F., 47 NY2d 215 [1979]; Koump v Smith, 25 NY2d 287, 294 [1969].)
*316 The burden that the LLC and Stonehill must meet cannot be satisfied by counsel’s conclusory assertions of privilege, rather the proponent of the privilege must set forth competent evidence establishing the elements of the privilege. (See Martino v Kalbacher, 225 AD2d 862 [3d Dept 1996].) To satisfy the burden, the party cannot rely on conclusory assertions, but rather must proffer competent evidence to demonstrate that its privilege claims are well founded. (See von Bulow by Auersperg v von Bulow, 811 F2d 136, 141 [2d Cir 1987].)
Does the Attorney-Client Privilege Support the Instruction Not to Answer the Questions in Dispute?
The attorney-client privilege, the oldest among common-law evidentiary privileges (8 Wigmore, Evidence § 2290 [McNaughton rev 1961]) fosters the open dialog between lawyer and client that it is deemed essential to effective representation. (See Matter of Vanderbilt [Rosner — Hickey], 57 NY2d 66 [1982]; Priest at 67.) As the New York Court of Appeals set forth in Spectrum Sys., “CPLR 4503 (a) states that a privilege exists for confidential communications made between attorney and client in the course of professional employment, and CPLR 3101 (b) vests privileged matter with absolute immunity.” (Spectrum Sys. at 377.) In order for the privilege to apply, the communication from attorney to client must be made for “the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship.” (Rossi v Blue Cross & Blue Shield of Greater N.Y., 73 NY2d 588, 593 [1989].) The communication itself must be primarily or predominately of legal character. (Id. at 594.) The attorney-client privilege insulates from disclosure a discreet category of communications between attorney, client, and, in some instances, third parties that assist the attorney to formulate and render legal advice. (See United States v Kovel, 296 F2d 918, 922 [2d Cir 1961]; see also Westinghouse Elec. Corp. v Republic of Philippines, 951 F2d 1414, 1424 [3d Cir 1991]; Delta Fin. Corp. v Morrison, 13 Misc 3d 441 [Sup Ct, Nassau County 2006].) The privilege does not apply merely because a statement was uttered by or to an attorney (or an attorney’s agent). Nor does it attach simply because a statement conveys advice that is legal in nature. (See HPD Labs., Inc. v Clorox Co., 202 FRD 410 [D NJ 2001].)
The privilege is not limited, however, to communications directly between the client and counsel. It also encompasses communications between attorney and a client’s agent or representative provided that the communications are intended to fa *317 cilitate the provision of legal services by the attorney to the client. (See United States v Adlman, 68 F3d 1495 [2d Cir 1995]; Golden Trade, S.r.L. v Lee Apparel Co., 143 FRD 514, 518 [SD NY 1992].) It does not, however, cover communications between a nonlawyer and a client that involve the conveyance of legal advice offered by the nonattorney, except perhaps when the nonlawyer is acting under the supervision or the direction of an attorney. (See e.g., National Hockey League Players’ Assn. v Bettman, 1994 WL 38130, *12, 1994 US Dist LEXIS 1160, *36 [SD NY, Feb. 4, 1994]; Stryker Corp. v Intermedics Orthopedics, Inc., 145 FRD 298, 305 [ED NY 1992].) Furthermore, the privilege protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation. (See Bank Brussels Lambert v Credit Lyonnais [Suisse] S.A., 160 FRD 437 [SD NY 1995]; see also In re Grand Jury 90-1, 758 F Supp 1411, 1413 [D Colo 1991].) “A privileged communication should not lose its protection if an executive relays legal advice to another who shares responsibility for the subject matter underlying the consultation.” (See SCM Corp. v Xerox Corp., 70 FRD 508, 518 [D Conn 1976].) This follows from the recognition that since the decision-making power of the corporate client may be diffused among several employees, the dissemination of confidential information to such persons does not defeat the privilege. (See id.)
However, a review of the transcript of the deposition and briefs with attached exhibits submitted by counsel does not support the instruction to the witness, Mr. Teetsel, not to answer the questions in dispute posed by counsel for DFC based upon the attorney-client privilege. The questions in dispute do not seek information protected by the attorney-client privilege.
Question 1 only concerns the LLC’s financial resources to fund the litigation and does not involve or invoke the attorney-client privilege. Question 2 posed to Mr. Teetsel during a line of questioning regarding a meeting of the litigation committee also does not involve or invoke the attorney-client privilege. Even assuming, arguendo, that the litigation committee was properly constituted, and the court makes no such ruling, conversations amongst the litigation committee outside the presence of counsel or when the record is not clear that conversations with counsel were the subject of the communications between the litigation committee members are not protected. There has been no testimony from Mr. Teetsel in the transcript that would indicate that a response to the questions in dispute would be divulging *318 communications involving counsel. There is no evidence in the transcript that the two nonlawyers, Mr. Teetsel and Mr. Morrison, were discussing privileged information.
The court finds that there is no per se privilege or “blanket privilege” for every communication between members of a litigation committee based solely upon their membership in a litigation committee. It is essential that the proponents of the privilege set forth facts and evidence to support the invocation of the attorney-client privilege. Notwithstanding that nonlawyers are conducting a conversation, a communication is subject to the attorney-client privilege if the record is clear that a conversation with counsel is the subject of the communication between the nonlawyers.
As the transcript in this case is devoid of any evidence that answers to the questions in dispute might have been in the context of advice received from counsel, the objection to the questions in dispute and the instruction not to answer is hereby overruled, and the witness, Mr. Teetsel, is directed to answer the questions in dispute at the next scheduled day for his deposition.
Does the Work-Product Privilege Support the Instruction Not to Answer?
As discussed above, the LLC and Stonehill also invoke the work-product privilege as an alternative ground to support their invocation of privilege and instruction to Mr. Teetsel not to answer the questions in dispute. Although the attorney work-product privilege is discussed at length in their submissions, counsel for the LLC and Stonehill specifically cite the attorney-client privilege as the basis for not answering the questions in dispute during the deposition.
Section 221.2 of part 221 of the Uniform Rules for Trial Courts, entitled “Uniform Rules for the Conduct of Depositions,” states:
“A deponent shall answer all questions at a deposition, except (i) to preserve a privilege or right of confidentially .... An attorney shall not direct a deponent not to answer except as provided in CPLR Rule 3115 or this subdivision. Any refusal to answer or direction not to answer shall be accompanied by a succinct and clear statement of the basis therefor. If the deponent does not answer a question, the examining party shall have the right to complete the remainder of the deposition.” (22 NYCRR *319 221.2.)
Although counsel for the LLC during the deposition specifically cited the attorney-client privilege as the basis for the instruction not to answer the questions in dispute, he also stated, in a somewhat sweeping manner when pressed to set forth the basis for the instruction, that he was “talking about every privilege that attaches to the Litigation Committee” (see deposition transcript at 178). Notwithstanding the lack of specificity by counsel for the LLC and Stonehill regarding their claim of privilege other than the attorney-client privilege, the court will address this alternative invocation of privilege because it believes it is important to make the court’s position on this issue known to the parties.
According to Weinstein-Korn-Miller, CPLR 3101 (c) should be construed as narrowly as possible to include only those materials prepared by the attorney, acting as an attorney and containing his or her analysis and trial strategy. (See Weinstein-KornMiller, NY Civ Prac ¶ 3101.44 [2d ed]; see also Aetna Cas. & Sur. Co. v Certain Underwriters at Lloyd’s, 263 AD2d 367 [1st Dept 1999].) The basic New York law on the scope of work-product immunity has been guided by Hickman v Taylor (329 US 495 [1947]), the leading case on work-product immunity in federal practice. According to Hickman, the work product of an attorney consists of interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible things. The burden of showing an appropriate immunity, whether under CPLR 3101 (c) or any other immunity provision, is on the party asserting it. (See generally Koump v Smith, 25 NY2d 287 [1969].) Assertions that documents constitute attorney work product or material prepared for litigation will not suffice. (See Salzer v Farm Family Life Ins. Co., 280 AD2d 844 [3d Dept 2001]; Zimmerman v Nassau Hosp., 76 AD2d 921 [2d Dept 1980].)
A lawyer can perform work of a legal nature as well as a nonlegal nature. The legal work performed by the lawyer need not be done directly by the lawyer himself or herself, but can qualify for the attorney work-product exclusion even if done by a nonlawyer, acting under the direction of a lawyer. (See Weinstein-Korn-Miller, NY Prac ¶ 3101.44b [2d ed].) In the case of the United States v Nobles (422 US 225 [1975]), for example, the Supreme Court of the United States ruled that the federal work-product doctrine exempts from disclosure the report of an investigator retained by the attorney for the defendant in a *320 criminal case. The investigator had interviewed a witness to the armed robbery of which the defendant was accused. The essence of the conversations was preserved by the investigator in a written report. The Supreme Court stated:
“At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client’s case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.” (Id. at 238-239.)
As stated in the analysis of the attorney-client privilege, once again, the court finds that there is no evidence in the transcript or otherwise that the work product of the “Litigation Committee” was the subject of work performed by an attorney or completed, at the behest of an attorney. Answers to the questions in dispute will not reveal the opinions, thought processes and recommendations of counsel, i.e., attorney work product. Accordingly, the court finds that the work-product privilege does not give rise to a proper basis for the objection and instruction not to answer the questions in dispute.
Conclusion
The witness, Mr. Teetsel, is directed during the next day of his deposition to answer the questions in dispute in compliance with this decision.

 This decision does not, nor is it meant to, render a determination regarding the validity of the existence of the LLC’s “Litigation Committee.” Both KPMG and DFC have, in their submissions, disputed the validity of the LLC’s “Litigation Committee.”