*351 OPINION OF THE COURT
Ira B. Warshawsky, J.
This matter is a class action swiftly approaching trial. During the deposition of David L. White, Jr., an actuary and principal of KPMG, who has been hired by the defendant as a litigation consultant and testifying expert, said witness was directed by defense counsel not to answer several questions. Counsel directed the witness not to answer the questions unless he could do so without disclosing his “thought process in connection with the litigation.” Defendant’s counsel offered to go off-the-record to work with plaintiffs counsel to determine if he could limit his questions so that the answers would not delve into what defense counsel considered protected information.
This offer was rejected and the witness, not surprisingly, could not answer the questions without, he believed, violating counsel’s direction. (“I won’t answer on the basis that I don’t know how to distinguish between attorney work product and the mechanics of the assignment itself.”)
When the parties brought this issue to the court’s attention, the court directed that letter briefs be submitted on this issue. The court received the plaintiffs on January 9, 2007 and that of the defendant on January 17, 2007. The issue before the court is whether the deposition of Mr. White should be reopened and that he then be directed to answer the questions previously posed by the plaintiff.
KPMG was retained by William Penn pursuant to a letter of engagement dated November 29, 2006. However, it is clear that KPMG began work on this case perhaps as early as November 22, 2006. Mr. White returned from a trip to Korea on November 22, 2006. It is also clear that only two people at KPMG would fill the needs of defendant: Bud Friedstat, who would be on vacation during the scheduled deposition of experts, and Mr. White, who was aware that he would be the expert witness in this case. Mr. White then spent approximately 25 to 30 hours drafting his report. (White transcript at 28-29.) As noted, the retainer letter is dated November 29, 2006. It was executed on November 30, 2006. On December 1, 2006 the parties exchanged expert reports.
Thus, the court finds the witness was retained not only as a litigation consultant (to provide advisory services), but as an expert witness, a testifying expert, as of the time he began working on the assignment.
*352 It should also be clear the date for exchanging expert reports was set at a conference on December 20, 2005, said date being November 17, 2006. At conferences held in August and October, the court discussed the forthcoming deadline with the parties. On November 16, 2006, at defendant’s request, the court extended the expert deadline to December 1, 2006. Thus, it is clear the defendant did not even contact KPMG until four days afterward (nearly five years after the litigation was started). These facts would be important if defense counsel tried to differentiate Mr. White’s role as a litigation consultant from his role as an expert witness. However, she has wisely not made that argument, at least not very strongly, and any such argument on her part is rejected by the court.
There were four contacts between Mr. White and one or more representatives of William Penn and defense counsel:
1. Teleconference of November 30, 2006: Mr. White, Nancy January, senior actuary of William Penn, and defense counsel, Ms. Dunn.
2. Teleconference of December 4, 2006: Mr. White, Ms. January, Mr. David Orr, additional senior actuary of William Penn, Bryan Newcombe, William Penn’s general counsel, and defense counsel, Ms. Dunn.
3. Conversation of November 22, 2006: Mr. White and defense counsel, Ms. Dunn.
4. Conversation of December 13, 2006 (day prior to deposition): Mr. White and defense counsel, Ms. Dunn.
Mr. White has refused to answer questions concerning these conversations as previously noted based upon Ms. Dunn’s attorney work product argument (that it would reveal her mental impression).
Our law, CPLR 3101 (a), directs that there shall be “full disclosure of all matter material and necessary in the prosecution or defense of an action.” The statute embodies the policy and determination that liberal discovery encourages fair and effective resolution of disputes on the merits, minimizing the possibility of ambush and unfair surprise. (See Weinstein-Korn-Miller, NY Civ Prac ¶¶ 3101.01 — 3101.03; Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 376 [1991].)
Concomitantly the CPLR also established protection for common-law privileged matter in CPLR 3101 (b) (attorney-client privilege), 3101 (c) work product, and 3101 (d) material prepared for litigation.
*353 There is a dramatic difference between a fact witness and one who will be a testifying expert (see Santariga v McCann, 161 AD2d 320, 321 [1st Dept 1990]); and the extent of inquiring of a nontestifying expert is limited.
Plaintiffs counsel argues that CPLR 3101 (d) represented a clear liberalization of restrictions on an expert witness. He cites Rosario v General Motors Corp. (148 AD2d 108, 113 [1989]): “[Disclosure from an expert should be virtually as available now as it was from a nonparty witness before the amendments [referring to CPLR 3101] . . . which is to say that it should be available practically for the asking.” The court fully agrees and the defendant does not argue these issues. Rather, defense counsel relies (falls back?) on the attorney work product argument, essentially arguing that though disclosure from an expert might be quite broad, it is and always will be trumped by the “attorney work product” protection.
The defendant as the party asserting the protection of the work product doctrine bears the burden of establishing its propriety. (Crow-Crimmins-Wolff & Munier v County of Westchester, 123 AD2d 813, 814 [2d Dept 1986].) And mere assertion that the proposed responses are/would be attorney work product does not suffice as meeting the burden placed on the resisting party (our defendant). (See Doe v Poe, 244 AD2d 450, 451-452 [2d Dept 1997].)
Respective counsel for plaintiff and defendant take different views on the scope of attorney work product. Plaintiffs counsel obviously looks to narrow the definition while defense counsel broadens it.
The plaintiff argues work product is limited “only to those materials that are prepared by an attorney who is acting as an attorney, and which contain the attorney’s analysis and trial strategy.” (Doe, supra, 244 AD2d at 451, citing Kane v Her-Pet Refrig., 181 AD2d 257, 267 [2d Dept 1992].)
Defense counsel argues that “communications between counsel and expert during which counsel reveals her mental impressions, conclusions, opinions or legal theories are wholly undiscoverable attorney work product whether the witness is a testifying expert or not. This privilege is unqualified and absolute.” (Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 376 [1991] [attorney’s work product is “absolutely immune” from disclosure].)
Three categories of protected materials are set forth in CPLR 3101 as previously noted: privileged matter, absolutely immune *354 from discovery (CPLR 3101 [b]); attorney’s work product, also immune from discovery (CPLR 3101 [c]); and trial preparation materials, subject to disclosure only on a showing of substantial need and that would be undue hardship in obtaining the materials by other means (CPLR 3101 [d] [2]).
Defense counsel, as noted, has argued work product and two alternatives, the translator exception and material prepared for trial. We are not dealing with “material” in the “hard copy” sense of the word, but rather Ms. Dunn’s (defense counsel) conversations with the expert witness which she argues reveal her mental impressions, conclusions, or legal theories. More specifically, in her letter brief of January 16, 2007, Ms. Dunn states: “I communicated with Mr. White in order to: (1) understand the actuarial concepts at issue in this action; and (2) provide necessary explanations to Mr. White in order for him to complete an expert report regarding the actuarial methods used and conclusions drawn by William Penn.”
The problem for the parties claiming protection is that they bear the burden of proving it, and, more importantly, concerning the communications in question, the protection is limited to the communication, not to the underlying facts. (Upjohn Co. v United States, 449 US 383, 395-396 [1981].)
Thus, under our facts, what Mr. White did, said or wrote would not be privileged, but what Ms. Dunn did or said reflecting theory of the case would be privileged. Protected work includes oral as well as written communication. (Mahoney v Staffa, 178 AD2d 875 [3d Dept 1991].) It is because of the intertwining of Ms. Dunn’s conversations allegedly containing her mental impressions with Mr. White’s facts that the slope becomes quite slippery. When “nonprivileged information is included in an otherwise privileged lawyer’s communication[s]” (and I will assume work product for the moment), the document and/or communication does not destroy the immunity it otherwise would have. (See Spectrum Sys., supra at 378.)
Mr. White was deposed on facts. The interfacing of Ms. Dunn’s attorney work product (mental impressions and legal theories) with what otherwise would be “facts” from the witness (Mr. White) could provide “absolute immunity” to said facts if they were inextricably intertwined. The format of plaintiffs counsel’s questions and his refusal to rephrase the questions left Ms. Dunn little choice but to object, but not necessarily the foundation to support her position.
Defendant also argues that the contested areas are protected under CPLR 3101 (b) and the “translator exception” to the *355 third-party waiver of privilege. As this court has recently noted, “[a]s a general rule, disclosure of attorney-client communication to a third party or communications with an attorney in the presence of a third party, not an agent or employee of counsel, vitiates the confidentiality required for asserting the privilege.” (Delta Fin. Corp. v Morrison, 13 Misc 3d 441, 444-445 [Sup Ct, Nassau County 2006] [Delta I], citing Aetna Cas. & Sur. Co. v Certain Underwriters at Lloyd’s, London, 176 Misc 2d 605, 610 [Sup Ct, NY County 1998].) However, “[c]ommunications made to a person serving as a translator or interpreter in order to facilitate communications between the lawyer and the client are a commonly recognized exception to the third-party disclosure rule, and do not waive the attorney-client privilege.” (Delta I, 13 Misc 3d at 445; see also People v Osorio, 75 NY2d 80, 84 [1989] [“communications made to counsel through a hired interpreter, or one serving as an agent of either attorney or client to facilitate communication, generally will be privileged”].)
There is a difference, however, between Delta I (cited above) and the instant case. Based upon the timing of the retention of KPMG’s Mr. White, by William Penn, it is clear to the court he was hired as an expert simultaneously with being hired to provide “advisory services.” (See retention letter, exhibit A to defendant’s letter brief.) Ms. Dunn argues Mr. White was needed as a “translator” so that she could understand the actuarial issues in our case. In Delta I (supra), the LLC did not have a staff of people to play the role of “translator” as does William Penn. It needed Boston Portfolio Advisors to assist it. If Ms. Dunn needed a “translator” she had Ms. Nancy January and Mr. David Orr, senior actuaries at William Penn.
It would be quite surprising if Ms. Dunn needed Mr. White to help her “understand the actuarial concepts at issue in this action” after four years of litigation with the ever ready assistance of two of William Penn’s senior actuaries at her service and part of the discussions perhaps better called “cram sessions” with Mr. White.
This position is even less understandable when placed up against Ms. Dunn’s second point that she needed to tell the expert about the “actuarial methods used and conclusions drawn by William Penn.” If she was capable of doing this, then why did she need the expert to help her “understand the actuarial concepts at issue”?
The court, therefore, finds that Mr. White is not protected by the “translator” exception based on the facts presented. Fur *356 ther, if Mr. White’s discussions with Ms. Dunn were purely to educate her on the actuarial issues involved, then, obviously, her communication with him was not meant nor did it convey her mental impressions, conclusions, opinions or legal theories.
Defendant’s counsel also argues that the conversations in issue are protected by CPLR 3101 (d) (2) which gives conditional immunity to materials that would otherwise be discoverable if the asserting party can show they were prepared in anticipation of litigation.
It is clear that
“[t]he restriction in CPLR 3101(d)(2), placed on discovery of any writing or thing created by or for a party or its agent in preparation for litigation, includes such matters as (1) the trial preparations of an attorney, or of those working for the attorney, that are not classified as attorney’s ‘work product’— i.e., that do not involve possible revelation of legal analysis and strategy; (2) material created at the lawyer’s request by the client; and (3) materials prepared in contemplation of litigation by non-lawyers and lawyers acting in a non-legal capacity.” (1-20 Weinstein-Korn-Miller CPLR Manual § 20.02 [e] [1] [2006], citing Point Tennis Co. v Irvin Indus., 86 Misc 2d 231 [Sup Ct, Nassau County 1976].)
Thus, the court finds that the defense has shown that Ms. Dunn’s conversations with Mr. White would fall under the umbrella of CPLR 3101 (d) (2) as “material prepared for litigation” (conversations in preparation for trial).
The burden then shifts to plaintiff to convince the court that there is a “substantial need of the materials in the preparation of the case and [he] is unable without undue hardship to obtain the substantial equivalent of the materials by other means.” (CPLR 3101 [d] [2].)
When an expert is deposed, the adversary is allowed to inquire upon what information did the expert render his/her opinion (what was the basis of the opinion), just as the expert report that is to be provided to the adversary is to state “in reasonable detail the subject matter on which each expert is expected to testify, the substance of the facts and opinions on which each expert is expected to testify, the qualifications of each expert witness, and a summary of the grounds for each expert’s opinion.” (CPLR 3101 [d] [1] [i] [emphasis supplied].)
In the instant case the court is reminded that an actuarial opinion produced in discovery was produced sans very important *357 supporting documents which only popped up after the plaintiffs expert had rendered his opinion which relied on the actuarial opinion produced by defendant.
Apparently defendant’s actuarial expert is rendering his opinion without any independent calculations relevant to our issue. What is clear, however, is that it is not clear upon what information Mr. White rendered his opinion. It is also clear that Ms. Dunn “provided necessary explanations” to him in order for him to complete his report. Thus, plaintiffs counsel argues that this material is not the “mental impression” of defense counsel (her work product), and, further, that it should not be protected by the “materials otherwise discoverable under subdivision (a) . . . and prepared in anticipation of litigation or for trial” (CPLR 3101 [d] [2]). This argument would be based on the fact that only Mr. White knows the grounds for his opinion, said “grounds” are not obtainable elsewhere and plaintiffs counsel has a substantial need for this information in the preparation of his case.
The court thus finds that Ms. Dunn’s part of the designated conversations with Mr. White and possibly he with her would be genetically covered by the attorney work product doctrine as well as material “prepared for litigation.” The court also finds that Mr. Flynn has met his burden of showing an entitlement under CPLR 3101 (d) (2) to whatever “explanations” Ms. Dunn gave to Mr. White “in order for him to complete [his] expert report in that such grounds have not previously been provided in discovery.”
Having examined the excerpts of the minutes, it is clear that questions by Mr. Flynn (plaintiff’s counsel), if not carefully structured, could reveal Ms. Dunn’s “work product.” It is also clear that Ms. Dunn used the “work product” shield as a sword when it came to questions of Mr. White vis-á-vis his conversation with William Penn senior actuaries, Ms. January and Mr. Orr. (Transcript at 170.) The mere presence of Ms. Dunn (defense counsel) at these meetings or on these conference calls does not protect them from inquiry. However, the court is unable to determine the propriety of the question on the limited record before it. More questions would have had to have been asked by plaintiffs counsel, in a foundation sense, to allow for an educated ruling by the court so that it could determine *358 whether there would be a “work product” or “material prepared for trial” protection for such inquiries.*
Plaintiffs counsel, thus, has a choice. He may: (1) submit written questions to the witness in the previously precluded areas, surgically avoiding reference to anything Ms. Dunn said to the witness during their meetings or telephone conversations which reflect her mental impressions or Mr. White’s replies thereto. Said written questions may also ask Mr. White what Ms. Dunn, Ms. January or Mr. Orr told him which he used as grounds for his opinion; or (2) the court will allow the deposition to be reopened so that plaintiff may inquire of these previously precluded areas, but only within the parameters listed above in (1). If plaintiff wishes to continue the deposition pursuant to that ruling, either the court or a court-appointed court *359 attorney/referee will supervise the balance of the deposition so that the deposition will be conducted pursuant to this decision; or (3) choose to end the deposition.
Plaintiff is to send his response to the above choices to this court within 48 hours of receipt of this decision (not counting weekends).

 The ABA’s section of litigation intends to propose to the ABA House of Delegates a resolution relating to this issue. Prevailing federal practice may very well require the disclosure of attorney communications with a testifying expert as part of “the data or other information considered by the witness” in reaching his/her opinion. There is no current comparable requirement in state practice. What is required in our state practice as noted above is “a summary of the grounds” of the expert’s opinion. (CPLR 3101 [d] [1] [i].) There is currently “no established tradition . . . whereby such depositions become a vehicle for discovering the attorney’s core work product.”
The above quoted material was drawn from “Report of the Commercial and Federal Litigation Section Opposing the Recommendation of the American Bar Association Section of Litigation That Draft Expert Reports and Communications Between Experts and Attorneys Not Be Discoverable Insofar as It Applies to New York State Practice.”
The ABA’s proposal reads as follows, special emphasis being paid to clause (iii) as it refers to our facts:
“RESOLVED, That the American Bar Association recommends that applicable federal, state and territorial rules and statutes governing civil procedure be amended or adopted to protect from discovery draft expert reports and communications between an attorney and a testifying expert relating to an expert’s report, as follows:
“(i) an expert’s draft reports should not be required to be produced to an opposing party;
“(ii) communications, including notes reflecting communications, between an expert and the attorney who has retained the expert should not be discoverable except on a showing of exceptional circumstances;
“(in) nothing in the preceding paragraph should preclude opposing counsel from obtaining any facts or data the expert is relying on in forming his or her opinion, including that coming from counsel, or from otherwise inquiring fully of an expert into what facts or data the expert considered, whether the expert considered alternative approaches or into the validity of the expert’s opinions.”