Arch Ins. Co. v Delric Constr. Co., Inc. (2019 NY Slip Op 05507)





Arch Ins. Co. v Delric Constr. Co., Inc.


2019 NY Slip Op 05507


Decided on July 10, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 10, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
ROBERT J. MILLER
HECTOR D. LASALLE
LINDA CHRISTOPHER, JJ.


2018-07111
 (Index No. 150563/16)

[*1]Arch Insurance Company, respondent,
v
Delric Construction Co., Inc., appellant.


Peckar & Abramson, P.C., New York, NY (Gerard J. Onorata of counsel), for appellant.
Torre, Lentz, Gamell, Gary & Rittmaster, LLP, Jericho, NY (Steven H. Rittmaster and Michael A. Prisco of counsel), for respondent.



DECISION & ORDER
In an action to recover damages for breach of contract, the defendant appeals from an order of the Supreme Court, Richmond County (Orlando Marrazzo, Jr., J.), dated April 10, 2018. The order denied the defendant's motion pursuant to CPLR 3103 for a protective order.
ORDERED that the order is affirmed, with costs.
In 2009, the defendant entered into a contract with the Dormitory Authority of the State of New York (hereinafter DASNY) to perform general construction work for the new Staten Island courthouse. In 2010, the defendant entered into a subcontract agreement with Capco Steel, LLC (hereinafter Capco), pursuant to which Capco agreed to perform work on the project. The plaintiff, as surety, issued a subcontract performance bond on behalf of Capco, as principal, in favor of the defendant.
In July 2012, the defendant terminated its subcontract agreement with Capco. The plaintiff and the defendant entered into a takeover agreement in March 2013, and the plaintiff arranged for completion of the work under the subcontract. During the course of the project, circumstances gave rise to claims by the defendant for additional compensation from DASNY. The plaintiff submitted a request for equitable adjustment (hereinafter REA) to the defendant, seeking more than $1 million in compensation due to extreme delay and disruption events, and the defendant agreed to submit the plaintiff's REA to DASNY for review and consideration.
On January 29, 2015, the defendant submitted its REA to DASNY, seeking more than $30 million and a time extension of 837 days. The defendant's REA consisted of a 127-page narrative (hereinafter the REA narrative) with exhibits attached. In July 2015, the defendant and DASNY agreed to mediate their dispute, and ultimately, the defendant settled its claims with DASNY and received more than $9 million.
In September 2016, the plaintiff commenced this action against the defendant to recover damages for breach of contract. Thereafter, in its first notice for production and inspection of documents, the plaintiff sought disclosure of the REA narrative. The defendant objected to the [*2]disclosure of the REA narrative, asserting that the document was privileged and confidential.
The issue of whether the REA narrative was privileged or confidential was the subject of several court conferences. The Supreme Court subsequently issued an order dated February 6, 2018, which, inter alia, directed the defendant to disclose the REA narrative, but reserved the defendant's right to move for a protective order.
By notice of motion dated March 7, 2018, the defendant moved pursuant to CPLR 3103 for a protective order to prevent the discovery of the REA narrative, arguing that the document was generated during the course of settlement negotiations with DASNY. The plaintiff opposed the motion. In an order dated April 10, 2018, the Supreme Court denied the defendant's motion for a protective order. The defendant appeals.
Pursuant to CPLR 3103(a), the Supreme Court may issue a protective order precluding disclosure that is palpably improper in that it seeks irrelevant and/or confidential information, or is overly broad and burdensome (see Ural v Encompass Ins. Co. of Am., 158 AD3d 845, 847; Greenman-Pedersen, Inc. v Zurich Am. Ins. Co., 54 AD3d 386, 387; Gilman & Ciocia, Inc. v Walsh, 45 AD3d 531, 531). " Trial courts are vested with broad discretion to issue appropriate protective orders to limit discovery. . . . [T]his discretion is to be exercised with the competing interests of the parties and the truth-finding goal of the discovery process in mind'" (Cascardo v Cascardo, 136 AD3d 729, 729-730, quoting Brignola v Pei-Fei Lee, M.D., P.C., 192 AD2d 1008, 1009). " The supervision of disclosure and the setting of reasonable terms and conditions therefor rests within the sound discretion of the trial court and, absent an improvident exercise of that discretion, its determination will not be disturbed'" (Berkowitz v 29 Woodmere Blvd. Owners', Inc., 135 AD3d 798, 799, quoting Mattocks v White Motor Corp., 258 AD2d 628, 629; see Scorzari v Pezza, 111 AD3d 916, 916; Spodek v Neiss, 70 AD3d 810, 810).
The burden of demonstrating that particular records are immune from discovery is on the party asserting such immunity (see Ren Zheng Zheng v Bermeo, 114 AD3d 743, 744; Melworm v Encompass Indem. Co., 112 AD3d 794, 795; Schreiner v Long Is. Light. Co., 124 AD2d 578, 579; Zimmerman v Nassau Hosp., 76 AD2d 921, 921-922). Here, the defendant failed to support its motion with anything other than its conclusory assertions that the REA narrative was generated during the course of settlement negotiations, which is insufficient to show that the document was immune from disclosure (see Ligoure v City of New York, 128 AD3d 1027, 1028-1029; Zimmerman v Nassau Hosp., 76 AD2d at 921-922). Accordingly, the Supreme Court providently exercised its discretion in denying the defendant's motion for a protective order.
CHAMBERS, J.P., MILLER, LASALLE and CHRISTOPHER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court