■ DENNIS ROSSI, Respondent, v BLUE CROSS AND BLUE SHIELD OF GREATER NEW YORK, Appellant.

The issue here is whether a memorandum prepared by defendant's associate in-house counsel is barred from discovery as privileged. (CPLR 3101 [b], [c]; 4503 [a].)

The underlying action is for defamation. Plaintiff is a physician who specializes in the field of radiology. In April 1984 he began using a Diasonics NMR, also known as MRI scanner, for diagnostic purposes. Defendant allegedly declined to reimburse patients for the medical cost of the scan and told claimants: "Your contract does not cover procedures which are experimental or whose effectiveness is not generally recognized by an appropriate governmental agency." Notwithstanding the statement that the procedure was experimental and not recognized, the scanning procedure had been approved for use by the Federal Food and Drug Administration, National Center for Devices & Radiological Health.

The memorandum prepared by Edward T. Blaney, Jr. (now deceased), addresses the issue of a possible lawsuit against defendant based on the company's rejection of claims for services performed by plaintiff, Dr. Rossi. Mr. Blaney trans-

mitted the memorandum to defendant's medical director, to the vice-president of professional affairs, and to the corporate vice-president and general counsel. The memorandum is clearly an internal, confidential document. Nothing indicates that anyone outside the defendant company had access to it. In the document Mr. Blaney makes evaluations and offers legal advice. It also contains information obtained from other employees of defendant.

First, this confidential communication in which an attorney in defendant's employ offers legal advice to his client qualifies, pursuant to CPLR 4503 (a), as a communication "made between the attorney * * * and the client in the course of professional employment" and is privileged. Case law has similarly stated that to be privileged, the "communication must be made for the purpose of obtaining legal advice and directed to an attorney who has been consulted for that purpose" *(Matter of Grand Jury Subpoena [Bekins Record Stor. Co.])*, 62 NY2d 324, 329 [1984]; *Matter of Priest v Hennessy*, 51 NY2d 62 [1980]). In *Allied Artists Picture Corp. v Raab Prods.* (38 AD2d 537 [1st Dept 1971]), the First Department held that the attorney-client privilege was properly invoked to protect interoffice memoranda prepared by defendant's in-house counsel which were legal in nature. Nothing suggests that this is a situation where a document was passed on to a defendant's attorney in order to avoid its disclosure. *(Radiant Burners v American Gas Assn.,* 320 F2d 314 [1963], *cert denied* 375 US 929 [1963].)

In defining the scope of the attorney-client privilege, the Court of Appeals has stated the following: "First, it is beyond dispute that no attorney-client privilege arises unless an attorney-client relationship has been established. Such a relationship arises only when one contacts an attorney in his capacity as such for the purpose of obtaining legal advice or services * * * Second, not all communications to an attorney are privileged. In order to made a valid claim of privilege, it must be shown that the information sought to be protected from disclosure was a 'confidential communication' made to the attorney for the purpose of obtaining legal advice or services * * * Third, the burden of proving each element of the privilege rests upon the party asserting it * * * Finally, even where the technical requirements of the privilege are satisfied, it may, nonetheless, yield in a proper case, where strong public policy requires disclosure." *(Matter of Priest v Hennessy,* 51 NY2d 62, 68-69, *supra.)*

In *Matter of Priest v Hennessy (supra),* the Court of Appeals

ruled that the attorney-client privilege did not bar disclosure of legal fees received by lawyers representing alleged prostitutes whether those fees were paid by the clients or a third person.

In the case of *Matter of Jacqueline F.* (47 NY2d 215 [1979]), the Court of Appeals directed disclosure of a client's address on public policy grounds. There, the Court of Appeals determined that an attorney should disclose the address of his client, an aunt of the infant, whose custody was sought by her natural parents. Shortly after her birth, the infant had been placed with the paternal aunt because of the illness of the mother. Subsequently, the aunt, without the knowledge of the natural parents, obtained letters of guardianship from the Surrogate's Court. These letters were revoked by the Surrogate's Court and the aunt directed to deliver· custody of the child to the natural parents. That decision was affirmed by this court. In the meantime, however, the aunt had gone with the child to Puerto Rico. The Court of Appeals directed disclosure because otherwise a court mandate to return the child to her natural parents might have been frustrated.

It should be noted that it was the case of *Matter of Jacqueline F. (supra)* which the Court of Appeals cited when it stated in *Matter of Priest v Hennessy (supra,* at 69) that the attorney-client privilege could yield in a case "where strong public policy requires disclosure."

The second reason for finding against disclosure is that the document, which contains the attorney's legal analysis and conclusions, is immune from discovery as an attorney's work product pursuant to CPLR 3101 (c). The document reflects the use of the attorney's professional skills in analyzing the language used in the rejection letters *(see, Hoffman v Ro-San Manor,* 73 AD2d 207, 211 [1st Dept 1980]). Concur—Ross, Rosenberger and Smith, JJ.

Kupferman, J. P., and Ellerin, J., dissent in a memorandum by Ellerin, J., as follows: The rules governing pretrial procedures encourage full disclosure of all evidence material and necessary in the prosecution or defense of an action. Discovery of all facts bearing on the controversy is to be liberally allowed, in order to facilitate the disposition of suits. and to advance the function of a trial to ascertain truth. *(E.g., Allen v Crowell-Collier Publ. Co.,* 21 NY2d 403; *Rios v Donovan,* 21 AD2d 409, 411.) In this regard, the attorney-client privilege (CPLR 4503), as an exception from disclosure (CPLR 3101 [b]), should be carefully examined to ensure that its application is

consistent with its purpose. *(Matter of Jacqueline F.,* 47 NY2d 215, 219.)

The purpose of the attorney-client privilege is to encourage full disclosure between attorney and client and ensure that persons in need of professional advice can disclose their confidential problems to an attorney without fear that such facts will be made public. *(E.g., Matter of Jacqueline F., supra.)* The interoffice memorandum here in issue is of a different character. The memo merely reports facts and imparts observations more in the sense of a consultation regarding business affairs as opposed to sensitive and confidential information in the nature of a client's frank communication of secrets to an attorney. The memo is essentially a report of corporate business affairs of the type normally subject to disclosure in commercial litigation. The result should not be different merely because the writer is nominally an attorney. Although Mr. Blaney is the corporate counsel of defendant and the document at issue notes in passing the possibility of a lawsuit, the thrust of the report concerns the quality of a business judgment and does not in any significant way involve a lawyer's learning and professional skills reflecting legal research or theory. *(Cf., Hoffman v Ro-San Manor,* 73 AD2d 207, 211.) I would, therefore, affirm the trial court's order directing disclosure of the memo.