OPINION OF THE COURT
 

 Kaye, J.
 

 An internal memorandum from a corporate staff attorney to a corporate officer communicating advice regarding a company form that was the subject of an imminent defamation action is protected from disclosure in that action by the attorney-client privilege (CPLR 4503 [a]).
 

 As alleged in the complaint, in April 1984, plaintiff, a physician specializing in radiology, opened a facility for medical diagnostic testing through the use of a Diasonics NMR (nuclear magnetic resonance) Imaging Scanner. Over the next year and a half, plaintiff performed NMR scans on numerous patients, among them subscribers of defendant health insurer, Blue Cross and Blue Shield. Defendant allegedly rejected more than 2,000 claims by plaintiff’s patients seeking reimbursement for the scans. In rejecting claims, defendant sent its subscribers a form containing the following statement: "Your contract does not cover procedures which are experimental or whose effectiveness is not generally recognized by an appropriate governmental agency.” Apparently, the procedure had in fact been approved by the Federal Food and Drug Administration, National Center for Devices and Radiological Health.
 

 After several times notifying defendant of the FDA approval and unsuccessfully seeking correction of the statement, on May 2, 1985, plaintiff drew up a summons and complaint for defamation. In the complaint, plaintiff pleaded that hundreds of his patients who had received defendant’s rejection notice condemned him for using an unapproved, experimental nuclear procedure that could harm them physically. Plaintiff alleged that Blue Cross knew that the language used in rejecting his patients’ claims was false and fraudulent, but
 
 *591
 
 that it nonetheless persisted in sending the statement to his patients, gravely damaging his practice and reputation.
 

 The focus of this appeal is an internal Blue Cross memorandum dated May 2, 1985 — the date of the summons and complaint — from Edward Blaney, Jr., to Dr. Mordecai Berkun. Blaney was a lawyer employed by Blue Cross on its counsel’s staff, not a company officer; Berkun was an officer of Blue Cross and its Medical Director. Copies of the memorandum were indicated for C. Ammarati, Blue Cross Vice-President of Professional Affairs (Berkun’s staff superior), and J. L. Shurtleff, Blue Cross Vice-President and General Counsel (Blaney’s staff superior).
 

 In response to discovery requests, defendant identified the Blaney memorandum but withheld production on grounds of attorney-client privilege, work product and material prepared for litigation. While the document has not been made public, defendant has described its contents, paragraph by paragraph, as follows. According to defendant, the first paragraph refers to conversations between Blaney and plaintiff’s attorney regarding a possible defamation suit based on the rejection form; the second concerns conversations between Blaney and the FDA regarding plaintiff’s NMR Imaging System; the third paragraph sets forth Blaney’s understanding of Blue Cross’ NMR reimbursement policy and his understanding of new language that was going to be used to deny NMR claims; and the final paragraph expresses Blaney’s opinion and advice regarding the rejection language of the form, and requesting comments from the Medical Director.
 

 On plaintiff’s motion for production of the memorandum in its entirety, Supreme Court reviewed the document in camera and directed that it be turned over to plaintiff. A divided Appellate Division reversed, concluding that the memorandum was a privileged attorney-client communication as well as work product, and it granted plaintiff leave to appeal to this court on a certified question. The dissenters would have ordered production because the thrust of the memorandum "concerns the quality of a business judgment and does not in any significant way involve a lawyer’s learning and professional skills reflecting legal research or theory.” (140 AD2d 198, 201.) We now affirm on the ground that the memorandum is privileged, and therefore do not reach the alternative arguments advanced by defendant.
 

 To begin with points of agreement, no one questions that
 
 *592
 
 corporations, as other clients, may avail themselves of the attorney-client privilege for confidential communications with attorneys relating to their legal matters
 
 (see, Upjohn Co. v United States,
 
 449 US 383; 5 Weinstein-Korn-Miller, NY Civ Prac If 4503.06; McCormick, Evidence § 87, at 206-209 [Cleary 3d ed 1984]). A corporation’s communications with counsel, no less than the communications of other clients with counsel, are encompassed within the legislative purposes of CPLR 4503, which include fostering uninhibited dialogue between lawyers and clients in their professional engagements, thereby ultimately promoting the administration of justice
 
 (see, Matter of Vanderbilt [Rosner
 
 — Hickey], 57 NY2d 66, 76;
 
 Matter of Priest v Hennessy,
 
 51 NY2d 62, 67-68;
 
 Matter of Jacqueline F.,
 
 47 NY2d 215, 218-219;
 
 Hurlburt v Hurlburt,
 
 128 NY 420, 424). The privilege applies to communications with attorneys, whether corporate staff counsel or outside counsel
 
 (see, e.g., Allied Artists Picture Corp. v Raab Prods.,
 
 38 AD2d 537). Finally, while the cases largely concern communications by clients to their attorneys, CPLR 4503 speaks of communications "between the attorney * * * and the client” (CPLR 4503 [a]), and the privilege thus plainly extends as well to the attorney’s own communications to the client
 
 (Matter of Creekmore,
 
 1 NY2d 284, 296; Richardson, Evidence § 415, at 410 [Prince 10th ed]; 5 Weinstein-Korn-Miller, NY Civ Prac If 4503.11a).
 

 Beyond these points of agreement, the attorney-corporate client privilege has raised nettlesome questions — particularly as to communications from corporate agents to counsel
 
 (see, e.g.,
 
 Waldman,
 
 Beyond Upjohn: The Attorney-Client Privilege in the Corporate Context,
 
 28 Wm & Mary L Rev 473 [1987]; Saltzburg,
 
 Corporate and Related Attorney-Client Privilege Claims: A Suggested Approach,
 
 12 Hofstra L Rev 279 [1984]; Sexton,
 
 A Post-Upjohn Consideration of the Corporate Attorney-Client Privilege,
 
 57 NYU L Rev 443 [1982]). But even where the communication in issue is — as here — from the staff attorney to the corporate agent, difficult questions may arise.
 

 For example, unlike the situation where a client individually engages a lawyer in a particular matter, staff attorneys may serve as company officers, with mixed business-legal responsibility; whether or not officers, their day-to-day involvement in their employers’ affairs may blur the line between legal and nonlegal communications; and their advice may originate not in response to the client’s consultation about a particular problem but with them, as part of an ongoing,
 
 *593
 
 permanent relationship with the organization. In that the privilege obstructs the truth-finding process and its scope is limited to that which is necessary to achieve its purpose
 
 (Matter of Priest v Hennessy, supra,
 
 at 68;
 
 Matter of Jacqueline F., supra,
 
 at 219), the need to apply it cautiously and narrowly is heightened in the case of corporate staff counsel, lest the mere participation of an attorney be used to seal off disclosure
 
 (see,
 
 Simon,
 
 The Attorney-Client Privilege as Applied to Corporations,
 
 65 Yale LJ 953, 970-973 [1956]; 5 Weinstein-KornMiller, NY Civ Frac fl 4503.06).
 

 Obviously, not every communication from staff counsel to the corporate client is privileged. It is equally apparent that no ready test exists for distinguishing between protected legal communications and unprotected business or personal communications; the inquiry is necessarily fact-specific (8 Wigmore, Evidence § 2296, at 566-567 [McNaughton rev ed 1961]). However, certain guideposts to reaching this determination may be identified by looking to the particular communication at issue in this case. Here, as the Appellate Division noted, the "memorandum is clearly an internal, confidential document. Nothing indicates that anyone outside the defendant company had access to it.” (140 AD2d, at 199.) Moreover, there is no dispute as to the author’s status or role. Blaney functioned as a lawyer, and solely as a lawyer, for defendant client; he had no other responsibility within the organization. His communication to his client was plainly made in the role of attorney.
 

 For the privilege to apply when communications are made from client to attorney, they "must be made for the purpose of obtaining legal advice and directed to an attorney who has been consulted for that purpose.”
 
 (Matter of Grand Jury Subpoena [Bekins Record Stor. Co.].,
 
 62 NY2d 324, 329.) By analogy, for the privilege to apply when communications are made from attorney to client — whether or not in response to a particular request — they must be made for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship
 
 (see, Matter of Creekmore, supra,
 
 at 296). Here that test is met.
 

 The subject of the memorandum was plaintiff’s imminent defamation suit based on the language of defendant’s rejection form. The memorandum, written the very day plaintiff’s summons and complaint were drafted, began by referring to Blaney’s conversations with plaintiff’s counsel and went on to express the lawyer’s views regarding the rejection language of
 
 *594
 
 the form. Communications from an attorney to a client dealing with the substance of imminent litigation generally will fall into the area of legal rather than business or personal matters
 
 (see, Britton v Lorenz,
 
 45 NY 51, 57;
 
 Whiting v Barney,
 
 30 NY 330, 334). That the memorandum does not reflect legal research is not determinative, where the communication concerns legal rights and obligations and where it evidences other professional skills such as lawyer’s judgment and recommended legal strategies
 
 (see,
 
 8 Wigmore, Evidence § 2296, at 567 [McNaughton rev ed 1961]).
 

 So long as the communication is primarily or predominantly of a legal character, the privilege is not lost merely by reason of the fact that it also refers to certain nonlegal matters
 
 (id.; see also,
 
 Gergacz,
 
 Attorney-Corporate Client Privilege,
 
 at 3-30 [1987]). Indeed, the nature of a lawyer’s role is such that legal advice may often include reference to other relevant considerations
 
 (see, United States v United Shoe Mach. Corp.,
 
 89 F Supp 357, 359). Here, it is plain from the content and context of the communication that it was for the purpose of facilitating the lawyer’s rendition of legal advice to his client. While we are mindful of the concern that mere participation of staff counsel not be used to seal off discovery of corporate communications, here "[n]othing suggests that this is a situation where a document was passed on to a defendant’s attorney in order to avoid its disclosure.” (140 AD2d, at 199 [citing
 
 Radiant Burners v American Gas Assn.,
 
 320 F2d 314,
 
 cert denied
 
 375 US 929].) It appears that Blaney was exercising a lawyer’s traditional function in counseling his client regarding conduct that had already brought it to the brink of litigation.
 

 Plaintiff finally asserts that even if the memorandum is privileged, the privilege should give way to "strong public policy considerations,” citing
 
 Matter of Priest v Hennessy
 
 (51 NY2d 62,
 
 supra)
 
 and
 
 Matter of Jacqueline F.
 
 (47 NY2d 215,
 
 supra).
 
 The "strong public policy considerations” are defendant’s alleged massive fraud and Blaney’s death. Neither the nature of the alleged wrong nor the attorney’s unavailability rises to the level of subverting the lawful and honest purposes for which the privilege exists; indeed, were Blaney alive, the communication still would be shielded from discovery. Protecting this memorandum from disclosure in plaintiff’s defamation action is, in the circumstances, consistent with the lawful and honest aims of the privilege to foster uninhibited communication between lawyer and client in the fulfillment of the professional relationship.
 

 
 *595
 
 Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.
 

 Chief Judge Wachtler and Judges Simons, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
 

 Order affirmed, etc.