Bellacosa, J.
(concurring). I agree that the Appellate Division blanket test too broadly precluded ex parte interviews by defining the term "parties” as used in Disciplinary Rule 7-104 (A) (1) to include all current employees of a corporate defendant. The court instead adopts an "alter ego” definition which, as I see it, will function almost identically with the rejected test. Also, it sacrifices an unnecessarily disproportionate amount of the truth-discovering desideratum of the litigation process. Lastly, circularity in the identification of and application to the "alter ego” test group may occur, which could prolong pretrial discovery and allow the shield of DR 7-104 (A) (1) to be fashioned into a sword.
These concerns could be avoided by limiting "parties”, for the purposes of this professional responsibility rule, only to those who are in the "control group” of the corporate defendant; that is, only those among "the most senior management who exercise substantial control over the corporation” (see, Comment, Ex Parte Communications with Corporate Parties: The Scope of the Limitations on Attorney Communications with One of Adverse Interest, 82 Nw U L Rev 1274, 1288, n 85).
*377 To be sure, that test is far from perfect itself. But the "control group” definition better balances the respective interests by allowing the maximum number of informal interviews among persons with potentially relevant information, while safeguarding the attorney protections afforded the men and women whose protection may well be of paramount concern— those at the corporate helm and the fictional entity itself, the corporation. Also, this approach is more consistent with the ordinary understanding and meaning of "party”, and more reasonably fits the purpose for which the disciplinary rule exists; a professional responsibility purpose quite distinct from enactments in public law prescribing the rights and protections of parties to litigation.
Discovery of the truth and relevant proofs is the end to which litigation is the means. The fewer parties to whom counsel can informally turn in the quest for facts on behalf of a client’s cause, the more cumbersome becomes the realization of this goal. The Appellate Division’s blanket definition and the "alter ego” test more severely limit access to parties with relevant information than does the control group test which I urge. One commentator has noted, "any rule that limits the attorney’s access to the truth necessarily contravenes a basic aim of our legal system” (Comment, Ex Parte Communications with Corporate Parties: The Scope of the Limitations on Attorney Communications with One of Adverse Interest, 82 Nw U L Rev, at 1279; see also, Leubsdorf, Communicating with Another Lawyer’s Client: The Lawyer’s Veto and the Client’s Interest, 127 Pa L Rev 683, 695, and n 47). Therefore, I believe the cost of the new "alter ego” test is too high and an unnecessary price to pay.
The court defines "party” as "corporate employees whose acts or omissions in the matter under inquiry are binding on the corporation * * * or imputed to the corporation for purposes of its liability” (majority opn, at 374). Similar language to this definition is found in the Official Comment to ABA Model rule 4.2 and caused one commentator to note that "[t]his language is probably the foggiest of all” (Wyeth, Talking to the Other Side’s Employees and Ex-Employees, 15 Litigation 8, 10 [No. 4 Summer 1989]). One consequence is that the determination of who qualifies for the disciplinary rule’s protection under the "alter ego” test may ironically replace a useful and straightforward ex parte interview with a whole new and expensive litigation tier. There is, after all, a begging-the- *378 question twist: the purpose of pretrial discovery — or the ultimate litigation question itself — may well be which employees fit into the protected "party” category under the "alter ego” classification. Who comprises the much narrower and smaller corporate "control group” is a relatively less complicated and conflicted problem.
I emphasize that attorney-client communications are unaffected by this case. This privilege, however, serves different purposes and policies (see, Upjohn Co. v United States, 449 US 383; Rossi v Blue Cross & Blue Shield, 73 NY2d 588). Also, an attorney representing an adverse party seeking to interview any corporate employee who has individually retained counsel would be bound by the prohibition of DR 7-104 (A) (1).
In sum, blanket protections from disclosure by a corporate defendant’s employees may be appropriate and necessary when the alternative is a violation of the attorney-client privilege (Upjohn Co. v United States, 449 US 383, supra; Rossi v Blue Cross & Blue Shield, 73 NY2d 588, supra). That can be remedied and controlled after the fact, rather than by shutting down the opportunities for appropriate fact gathering at the outset. The narrower restriction seems particularly suited to the situation before us, inasmuch as we are free to make a policy choice somewhat on a tabula rasa, save for the guidance only of the specialized Code of Professional Responsibility, not some broad public policy legislative enactment. After all, "[i]t is not the purpose of the rule [DR 7-104 (A) (1)] to protect a corporate party from the revelation of prejudicial facts.” (Wright v Group Health Hosp., 103 Wash 2d 192, 200, 691 P2d 564, 569 [1984].)
Chief Judge Wachtler and Judges Simons, Alexander, Titone and Hancock, Jr., concur with Judge Kaye; Judge Bellacosa concurs in a separate opinion.
Order modified, without costs, in accordance with the opinion herein and, as so modified, affirmed. Certified question answered in the negative.