| **Matter of Aoki** |
|:---:|
| 2024 NY Slip Op 31341(U) |
| April 12, 2024 |
| Surrogate's Court, New York County |
| Docket Number: File No. 2008-2604/H/I |
| Judge: Rita Mella |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

New York County Surrogate's Court
DATA ENTRY DEPT.

APR 12 2024

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------x
In the Matter of the Application of Devon Aoki and Steven
Aoki as Beneficiaries of the Trust Created under Article VIII
of the Will of                                                                            DECISION and ORDER

      ROCKY H. AOKI, also known as                              File No.: 2008-2604/H/I
          Hiroaki Aoki,
                Deceased,

to Revoke the Letters of Trusteeship Issued to Keiko Ono
Aoki as Trustee of the Trust.
-------------------------------------------------------------------------x
In the Matter of the Judicial Settlement of the First
Intermediate Account of Proceedings of Keiko Ono Aoki
as Trustee of the Trust under Article VIII of the Will of

      ROCKY H. AOKI, also known as                              File No.: 2008-2604/F
          Hiroaki Aoki,
                Deceased.
-------------------------------------------------------------------------x
In the Matter of the Judicial Settlement of the Second
Intermediate Account of Proceedings of Keiko Ono Aoki as
Trustee of the Trust under Article VIII of the Will of

      ROCKY H. AOKI, also known as                              File No.: 2008-2604/K
          Hiroaki Aoki,
                Deceased.
-------------------------------------------------------------------------x

M E L L A, S.:

The following papers were considered on the cross-motions regarding discovery, including by
subpoena, sought from non-parties Schulte Roth & Zabel LLP and Cowan, Liebowitz & Latman PC:

| Documents Considered | Numbered |
|---|---|
| Notice of Motion, dated April 14, 2022, for a Protective Order and to Quash Subpoena, by Respondent Keiko Aoki, with Affirmation, dated April 14, 2022, of Vincent Levy, Esq., Attaching Exhibits | 1, 2 |
| Keiko Aoki's Memorandum of Law in Support | 3 |
| Notice of Cross-Motion, dated April 21, 2022, by Devon Aoki and Steven Aoki, to Compel Discovery, with Affirmation, dated April 21, 2022, of David C. Rose, Esq., Attaching Exhibits | 4, 5 |
| Devon Aoki and Steven Aoki's Memorandum of Law in Opposition to Motion and in Support of Cross-Motion | 6 |
| Affidavit of Keiko Aoki, dated April 29, 2022, in Reply | 7 |

[* 1]

Affirmation of Taleah Jennings, Esq., dated April 29, 2022,
   in Opposition to Cross-Motion     8
Reply Affirmation, dated April 29, 2022, of Vincent Levy, Esq.,
   Attaching Exhibits     9
Keiko Aoki's Reply Memorandum of Law and in Opposition to Cross-Motion     10

The following papers were considered on the cross-motions regarding, in part, discovery of communications with Schulman Bhattacharya, LLC:

Documents Considered              Numbered

Notice of Motion to Compel, dated August 19, 2022, by Devon Aoki and
   Steven Aoki, with Affirmation, dated August 19, 2022, of Andrew M.
   Goldsmith, Esq., Attaching Exhibits     11, 12
Notice of Motion to Compel, dated August 26, 2022, by Guardian ad
   Litem Jessica M. Baquet, Esq. (GAL), with Affirmation
   of Jessica M. Baquet, Esq., dated August 26, 2022, Attaching Exhibits     13, 14
Memorandum of Law in Support of GAL's Motion     15
Notice of Cross-Motion to Compel, dated September 13, 2022, by
   Keiko Aoki, with Affirmation, dated September 13, 2022, of Jordan
   Pietzsch, Esq., Attaching Exhibits     16, 17
Memorandum of Law in Opposition to Motions and in Support of
   Cross-Motion     18
Reply Affirmation, dated September 23, 2022, of Jessica M. Baquet, Esq., in
   Further Support of GAL Motion, Attaching Exhibits     19
GAL's Reply Memorandum of Law     20
Reply Affirmation, dated September 23, 2022, of Andrew M. Goldsmith, Esq.,
   Attaching Exhibits     21

Litigation in the estate of Rocky Aoki, the founder of the Benihana Restaurant chain, has a long history, which is set forth in prior decisions of this and other courts and will not be repeated here. For present purposes, it is sufficient to note that decedent died in July 2008, and, more than 15 years later, there are still a number of contested proceedings pending in this court. Relevant here are three of those proceedings: in one, two of decedent's children, Devon Aoki and Steven Aoki (Devon and Steven) seek the removal of decedent's surviving spouse, Keiko Ono Aoki (Keiko), as Trustee of a trust created under decedent's will (the Trust); in the other

2

two proceedings, Keiko seeks the settlement of her accounts as Testamentary Trustee.[1] Before the court in these proceedings are two sets of cross-motions that raise the issue of the scope of the attorney-client privilege under circumstances where the party claiming privilege serves as a fiduciary and asserts advice of counsel as a defense. This decision determines these cross-motions.[2]

## BACKGROUND

The first set of cross-motions was filed in the removal proceeding. Thereafter, however, in recognition of the overlapping issues in the removal proceeding and Keiko's accounting as Trustee, the parties agreed that discovery in all proceedings should be conducted jointly, and it is currently contemplated that there will be a joint trial of the removal claims and the accounting objections.

In the first set of cross-motions, suspended Trustee Keiko, moves for a protective order (CPLR 3103) and to quash a subpoena (CPLR 2304) served on her former counsel, Schulte Roth and Zabel LLP (Schulte). Devon and Steven, who are beneficiaries of the Trust, have cross-moved, pursuant to CPLR 3124, to compel: 1) Keiko to comply with certain discovery demands seeking communications between her and Schulte and also between her and another firm that had represented her as Trustee, Cowan, Liebowitz & Latman PC (Cowan); and 2) Schulte to comply with their subpoena which requests production of certain documents and an examination under

---

1 Keiko initially accounted as Trustee for the period from September 3, 2010 through September 30, 2016. In 2020, in response to Devon and Steven's removal petition, which included substantial allegations of possible waste and bad faith, the court suspended Keiko as Trustee. Thereafter, Keiko filed a separate accounting for the period from October 1, 2016 through March 12, 2020, the date a successor trustee was appointed on an interim basis (the Interim Successor Trustee). Although styled as a separate accounting, the second is a continuation of Keiko's initial accounting.

2 Some of these motions, such as Keiko's September 13, 2022 motion, which is part of the second set of cross-motions, raised other discovery issues, but they were resolved in a decision of this court dated November 16, 2022 (*see Matter of Aoki*, NYLJ, November 21, 2022, at 23, col 3 [Sur Ct, NY County]).

oath of a person to be designated by Schulte (Schulte Subpoena). Regarding the documents sought, current counsel to Keiko confirms that Schulte has delivered to them all documents responsive to the Schulte Subpoena. Consequently, the portions of the cross-motions relating to documents sought in the Schulte Subpoena have been resolved as against Schulte. Current counsel to Keiko, however, has not produced the responsive documents received from Schulte, claiming that they are protected from disclosure by the attorney-client communication privilege. Thus, the remainder of the relief sought in Devon and Steven's cross-motion requires resolution.

Attorney-client privilege issues are also involved in the second set of cross-motions. There, Devon and Steven request, among other relief, an order compelling the production of documents—also withheld by Keiko—from another firm which previously represented her, Schulman Bhattacharya, LLC (Schulman). They seek to compel production of certain communications of Keiko with that firm, as well as communications among her and the Schulte and Schulman firms, that Keiko claimed were privileged in her privilege log. These communications are in the possession of Keiko's current counsel, but Keiko objects to their disclosure on privilege grounds.

The court appointed a guardian ad litem (GAL) in Keiko's initial accounting and the removal proceeding to protect the interests of the Trust's contingent remainder beneficiaries— Devon's infant children and Steven's unborn issue.[3] The GAL has taken positions in line with those of Devon and Steven, joining their removal proceeding as a petitioner and also objecting to Keiko's account as Trustee. With respect to the second set of cross-motions, the GAL supported Devon and Steven's motions to compel, and also moved separately to compel Keiko to comply

---

3 Under the Trust, Steven's share vested upon his attaining the age of 45. Consequently, the GAL's appointment for the contingent remainder interests for Steven's share of the Trust is no longer necessary, and the GAL's appointment is now limited to Devon's infant children. The orders dated May 22, 2018 and June 21, 2022, appointing the GAL in these proceedings are amended accordingly.

4

with the GAL's own discovery demands. That motion was granted in part in the court's November 16, 2022 decision.

After both sets of cross-motions were submitted, the parties also raised other challenges to the privilege log of Keiko on the one hand, and to Devon and Steven's privilege log on the other, and those were addressed in a decision of this court dated June 27, 2023 (*see Matter of Aoki*, NYLJ, June 30, 2023, at 6, col 2 [Sur Ct, NY County]). In addition, the parties agreed to have a referee (the Referee) resolve the parties' privilege disputes, and a referral order has been entered (*id*).[4]

## DISCUSSION

In New York, the right of parties to maintain the confidentiality of their communications with their lawyers and to insulate those communications from disclosure to their adversaries is protected by statute (CPLR 4503) and by long-standing principles that courts have upheld for centuries (*see Spectrum Systems Intern. Corp. v Chemical Bank*, 78 NY2d 371, 377 [1991][noting that the attorney-client privilege is the oldest among common law evidentiary principles]). This well-established rule, however, is in "[o]bvious tension" with the policy of this State to encourage liberal discovery in civil disputes (*id.* at 376-377), and, as a result, courts narrowly construe the privilege (*see Ambac Assur. Corp. v Countrywide Home Loans, Inc.*, 27 NY3d 616, 624 [2016]). The statute itself recognizes that a party may waive the privilege (CPLR 4503 [a]).

Keiko, as the party asserting the privilege, "bears the burden of establishing [her] entitlement to protection by showing that the communication at issue was between an attorney

---

4 The court anticipates that this decision will assist the Referee's resolution of all privilege and related disclosure issues.

5

and a client 'for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship,' that the communication is predominantly of a legal character, that the communication was confidential and that the privilege was not waived" (*Ambac Assur. Corp. v Countrywide Home Loans, Inc.*, 27 NY3d at 624, referencing *Rossi v Blue Cross & Blue Shield of Greater N.Y.*, 73 NY2d 588, 593-594 [1989]).

Keiko's assertion of privilege in these proceedings took place in the following context. Keiko served not only as Trustee but also as chief executive officer (CEO) of Benihana of Tokyo, LLC (BOT), an entity wholly owned by the Trust. Devon and Steven and the GAL have offered as grounds for Keiko's removal her litigation and business decisions while managing BOT and, specifically, its legal disputes with Benihana, Inc. (BI) (collectively, the BOT-BI Cases). In addition to serving as grounds for removal, Keiko's actions and decisions in the BOT-BI Cases serve as the basis for objections by Devon and Steven, and the GAL, who seek to surcharge Keiko in her accounting as Trustee. In particular, Devon and Steven and the GAL have alleged that these legal battles between BOT and BI were pursued in bad faith and led, among other things, to Keiko's incurring unreasonable and unnecessary attorneys fees, which were borne by the Trust.

In her Verified Answer and during the first phase of litigation in the removal proceeding, Keiko did not assert advice of counsel as a defense. However, in opposition to Devon and Steven's summary judgment motion in that proceeding, which the court denied in 2022 in favor of a trial, Keiko argued that summary removal should not be granted because she had relied in good faith on the advice of her counsel (*see Matter of Aoki*, NYLJ, June 27, 2022, at 21, col 1 [Sur Ct, NY County]). In support of her good faith argument, Keiko offered excerpts of certain communications between her and counsel to BOT, in particular, Rosenberg Feldman Smith LLP

6

(RFS), and Joseph L. Manson, III, Esq. (Manson), in which the advice she allegedly followed was provided. After the motion for summary judgment was denied, as agreed to by the parties, Keiko filed an Amended Verified Answer in the removal proceeding which included the advice of counsel defense.

Privilege of the Schulte Communications

As previously stated, the two sets of cross-motions involve similar issues but are distinct. The Schulte Subpoena and Devon and Steven's discovery demands seek Schulte communications related to, among other things: 1) the BOT-BI Cases; 2) the 2018 sale of a 75% equity interest in a BOT affiliate (the Minor Transaction);[5] 3) investments that Keiko caused the Trust and BOT to make; 4) Keiko's compensation from BOT; 5) BOT's alleged use of Keiko's private residences as office space; and 6) transfers of funds or assets between and among the Trust and Keiko. Devon and Steven describe these six subjects about which Keiko received advice as generally relating to the "ongoing, real-time and prospective administration of the Trust" and argue that these communications must be produced because: (i) they are relevant to their claims in the removal and accounting proceedings, and the Interim Successor Trustee, whom the court appointed upon suspending Keiko,[6] waived the attorney-client privilege; or (ii) Keiko waived the privilege of those communications by affirmatively relying on advice of

---

5 The Minor Transaction was a sale by BOT, while Keiko was Trustee and the CEO of BOT, of certain of its assets to an entity affiliated with a company known as Minor International. Although not originally pled in the removal petition, Devon and Steven made clear in their summary judgment motion they were relying on such transaction as a basis for removal and thereafter, upon agreement, amended their petition to include allegations regarding the sale. Schulte's billing time records make clear that the firm was providing counsel to Keiko concerning this transaction. For instance, the following entries come from those records:
"02/28/18. Review research re. obligation to inform beneficiaries of potential sale; call with WDZ and GC, Minor International, to discuss trust and trustee authority."
"05/07/18. Reviewed draft email re Minor Transaction and response to [Schulte] team re same."
"01/18/19. [R]eview and respond to correspondence from S. Schiller regarding Minor transaction details."

6 Although the Interim Successor Trustee is a party to these removal and accounting proceedings, he has not submitted papers or taken a position on these motions.

7

counsel as a defense.

Keiko avers in opposition that she retained Schulte "in or around November 2016 to advise [her] in [her] capacity as Trustee of the Rocky H. Aoki Testamentary Trust . . . in connection with the administration of the Trust and related litigation, including litigation against [Devon and Steven]." She further states: "I sought and obtained [Schulte]'s advice concerning how actions I took related to BOT's disputes with BI and the Minor transaction could affect actual and potential claims by [Devon and Steven]." Based on these assertions, she argues that all communications with Schulte (except the ones that she describes as "non-privileged communications" between Schulte and BOT's counsel or with "BI and related entities"), including those providing advice on the Trust's administration matters, are privileged. She reasons that the advice was rendered "when there was clear adversity between [Keiko] and [Devon and Steven] concerning [her] management of the Trust." Additionally, she maintains that it is only in her role as CEO of BOT, and not as Trustee, that she has asserted advice of counsel as a defense and that, therefore, the advice she received from Schulte in discharging her duties as Trustee, including defending against the claims of Devon and Steven, is not subject to any waiver.

*Relevance of the Communications Sought*

Objectants to the account of a fiduciary are statutorily "entitled to all rights" granted under Article 31 of the CPLR (SCPA 2211[2]). Parties to a proceeding for the removal of a fiduciary may also conduct Article 31 discovery (*see e.g. Matter of Langfur*, NYLJ, Apr. 21, 1992, at 28, col 3 [Sur Ct, Nassau County]; *Matter of Ohm*, NYLJ, Dec. 20, 1993, at 24, col 3 [Sur Ct, Westchester County]). Pursuant to CPLR 3101(a), "there shall be full disclosure of all matter material and necessary in the prosecution or defense of an action." Thus, any information

8

or document that would tend to support the removal and surcharge claims of Devon and Steven and the GAL—including that Keiko wasted the assets of the Trust by engaging in the BOT-BI Cases against the advice of counsel—or Keiko's defenses against those claims is material and should be disclosed, unless privileged. Because communications between Keiko and her lawyers—whether privileged or not—would tend to support the respective claims of the parties, they may not be withheld on relevance grounds.

*The Attorney-Client Privilege of Fiduciaries*

The parties here do not dispute that, unless separately waived, a trustee does not lose the right to have independent counsel—and risk having such communications with counsel disclosed and the privilege invaded—in adversarial proceedings by beneficiaries and others against that individual as trustee (*see* CPLR 4503 [a][2]; *Beck v Manufacturers Hanover Tr. Co.*, 218 AD2d 1, 17 [1st Dept 1995]; *Matter of Baker*, 139 Misc 2d 573, 577 [Sur Ct, Nassau County 1988]). Keiko takes issue, however, with what she characterizes as Devon and Steven's improper reliance on the "fiduciary exception" to the attorney-client privilege. As explained by the United States Supreme Court in *U.S. v Jicarilla Apache Nation* (564 US 162, 170 [2011]), under that exception, "when a trustee obtain[s] legal advice to guide the administration of the trust, and not for the trustee's own defense in litigation, the [trust] beneficiaries [are] entitled to the production of documents related to that advice."

The New York Court of Appeals embraced to a certain extent this exception to the attorney-client privilege in *Hoopes v Carota* (74 NY2d 716 [1989]). In *Hoopes*, the Court held that the privilege afforded to communications between fiduciaries and their lawyers could be invaded through a "good cause" showing, which included a demonstration of an identity of interests between the beneficiaries of a trust and the trustee concerning the advice that the

9

fiduciary obtained from counsel. In 2002, however, the legislature amended CPLR 4503 and "effectively eliminat[ed]" the fiduciary exception with respect to communications between personal representatives of estates, including trustees, and their counsel (*see Nama Holdings, LLC v Greenberg Traurig LLP*, 133 AD3d 46, 55, n 5 [1st Dept 2015]). In particular, the 2002 amendment (L 2002, ch 430, § 1), added section (a)(2)(A) to CPLR 4503, which states:

> "For purposes of the attorney-client privilege, if the client is a personal representative [defined in (a)(2)(B) to include testamentary trustees, as Keiko is here] and the attorney represents the personal representative in that capacity, in the absence of an agreement between the attorney and the personal representative to the contrary:
>
> "(i) No beneficiary of the estate is, or shall be treated as, the client of the attorney solely by reason of his or her status as beneficiary;
>
> "(ii) The existence of a fiduciary relationship between the personal representative and a beneficiary of the estate does not by itself constitute or give rise to any waiver of the privilege for confidential communications made in the course of professional employment between the attorney or his or her employee and the personal representative who is the client;"

This amendment to CPLR 4503 made clear that confidential communications between estate fiduciaries and their counsel are generally protected by the privilege, and that good cause to invade the privilege of those communications could not be established by the mere fact that the fiduciary owed a duty to the beneficiaries (adding subsection [2][A][ii] to CPRL 4503[a] to the CPLR). The amendment also clarified that, for purposes of the attorney-client privilege, the beneficiary should not be treated as a client of the estate fiduciary's attorney (adding subsection 4503[a][2][A][i] to the CPLR).

Relying on that amendment and the elimination of the fiduciary exception, Keiko argues that she can assert the attorney-client privilege as to all communications with Schulte (except the ones that, as previously noted, she describes as non-privileged), including those pertaining to the administration of the Trust and her management of BOT. Devon and Steven maintain that Keiko

10

must disclose her communications with Schulte pertaining to the ongoing administration of the Trust not because the fiduciary exception applies but because the privilege has been waived by the Interim Successor Trustee who replaced Keiko in March 2020.

*Waiver of the Privilege by the Interim Successor Trustee*

Devon and Steven argue that Keiko has no standing to assert the attorney-client privilege with respect to the communications between her in her capacity as Trustee and her lawyers because the privilege belongs not to Keiko individually but to the office of the trustee. There is no dispute that the Interim Successor Trustee has declined to assert any privilege with respect to communications with Keiko's prior lawyers regarding advice she received as Trustee and as CEO of BOT while serving as Trustee,[7] and such waiver, Devon and Steven maintain, prevents Keiko from asserting any privilege with respect to communications that pertain to "ongoing, real-time administration of the Trust," including Keiko's decisions about the management of BOT and its litigations.

For her part, Keiko argues that the privilege concerning her communications with Schulte belongs to her and to her alone—and that only she can waive it—because she retained that firm at a time she was in an adversarial relationship with Devon and Steven, who had threatened to remove her as Trustee or had actually sought her removal as a result of her decisions concerning the BOT-BI Cases, and other actions pertaining to BOT.[8] According to Keiko, the only relevant question is whether there was adversity between the Trust beneficiaries and her at the time that she retained counsel to defend her against the beneficiaries' claims and, once such adversity is

---

7 Keiko no longer serves as CEO of BOT because the Interim Successor Trustee removed her.

8 Specifically, Keiko maintains that any advice she received as Trustee concerning the BOT-BI Cases beginning as early as 2014, when Devon and Steven filed a petition in this court to compel her to account alleging that she was mismanaging BOT, is privileged.

11

established, the privilege of her communications with counsel attaches even if the advice pertained to ongoing or prospective administration of the Trust.

There are several reasons to conclude that, when it comes to legal advice relating to the discharge of a trustee's duties, including the management of trust assets or the administration of those assets, the privilege belongs to the office of the trustee (*see Matter of Kotick*, 2016 NY Slip Op 32788[U] [Sur Ct, NY County]). First, there should be consistency in the application of privilege waiver rules relating to who, between a predecessor in office or its successor, holds the attorney-client privilege. The law in New York for decades has provided that the privilege attached to attorney-client communications regarding a corporation's day-to-day management or its ongoing operations passes to the directors and officers of its successor corporation (*see Tekni-Plex, Inc. v Meyner and Landis*, 89 NY2d 123, 133 [1996] ["where efforts are made to run the pre-existing business entity and manage its affairs, successor management stands in the shoes of prior management and controls the attorney-client privilege with respect to matters concerning the company's operations"]). To be sure, the Court of Appeals in *Tekni-Plex* distinguished between communications concerning the former corporation's "general business," the privilege as to which passed to the management of the successor corporation, and those communications which related to the adversarial negotiations for its acquisition, the privilege as to which did not. The conclusion reached here applies solely to communications between the former Trustee and her counsel as they relate to the ongoing administration of the Trust.

Second, successor trustees play a special role in the protection of trust assets. By statute, successor trustees are granted "all powers, duties and discretion of the original [trustee]" (EPTL 11-1.1[b][12]), including the power and duty to administer the trust (EPTL 7-2.3[b][2]; SCPA 1502[6]). As part of these duties, the successor trustee must receive the assets from his or her

12

predecessor and ensure that the latter acted properly in administering the trust. In fact, the failure of a successor fiduciary to address any breach of duty by his or her predecessor in the administration of the trust exposes the former to liability (*see Bank of New York v New Jersey Title Guarantee & Trust Co.*, 256 App Div 609, 611 [1st Dept 1939] [a successor trustee who "neglects to take proper steps to redress a breach of trust committed by the predecessor" is liable to trust beneficiaries], *lv denied, rearg denied*, 257 App Div 806 [1st Dept 1939]). In order to discharge this critical responsibility, the successor trustee must be privy to all aspects of the predecessor's actions, including those involving litigation decisions, and must be able to waive the privilege afforded to the communications between the predecessor and the lawyers who represented him or her whenever the successor deems it necessary.

Third, the practical realities of trust administration support this conclusion. The business of any trust may include litigation. In fact, a successor trustee has the authority to substitute for his or her predecessor in any action or proceeding pending in favor of the latter at the time he or she ceased to act as trustee (SCPA 706[2]). A change in trustee—whether that change is the result of resignation, removal or some other reason—while litigation is ongoing should not cause the successor trustee to lose the right to assert the attorney-client privilege. The opposite result would unnecessarily disrupt the interests of the trust and its beneficiaries.

Keiko's argument that only she can waive the privilege of the Schulte communications because, as Trustee, she was in an adversarial relationship with Devon and Steven when the firm advised her regarding BOT ignores the reality that, at present, only the Interim Successor Trustee has a fiduciary duty to protect the Trust and its beneficiaries. This duty requires the Interim Successor Trustee to hold and assert the attorney-client privilege pertaining to ongoing Trust management advice in the manner most beneficial to the Trust, including waiving it, if necessary

13

to protect its assets. On the other hand, Keiko, as suspended Trustee, is only bound by self-interest.

The court thus concludes that the Interim Successor Trustee holds the privilege as to communications pertaining to the former trustee's ongoing administration of the Trust and its assets and as to advice sought to guide her in the discharge of her duties, including her decisions related to BOT, its management, its decision to engage in the Minor Transaction, and the BOT-BI Cases.[9] The Interim Successor Trustee having declined to assert any privilege with respect to communications between Keiko and the lawyers who represented her as Trustee in these matters, those communications must be disclosed to Devon and Steven and the GAL.[10]

The parties here disagree as to whether some of the advice that Keiko claims is privileged was provided to defend her in connection with adversarial proceedings with Devon and Steven—including the proceedings in this court, and thus concededly not discoverable—or whether it was provided in connection with the administration of BOT, an asset of the Trust, and therefore must be disclosed pursuant to this court's determination today. As has been explained by the Court of Appeals, disputes concerning privilege are better determined by examining the communications themselves (*see Spectrum Systems Intern. Corp. v Chemical Bank*, 78 NY2d at 381 ["Determining document immunity claims, and reviewing them, are largely fact-specific processes" and "better practice" is to conduct in camera review]; *see also Nama Holdings, LLC v*

---

9 The fact that the successor trustee here is serving on an interim basis does not make a difference in this analysis. During their tenures, interim successor trustees have the same fiduciary obligations as other successor trustees and should not be hamstrung in their ability to carry out their duties. Additionally, for the reasons explained above, the party holding the office of trustee must be able to control the access to communications of the "office" with its counsel related to the administration of the trust. The duty to administer the trust and protect its assets is no less onerous in a situation where the trustee serves on an interim basis.

10 That Keiko is no longer in office has no bearing on the court's privilege analysis. The court is not holding here that she lacks standing to assert attorney-client privilege at this time. Keiko's final status as Trustee has yet to be determined and, in any event, it is undisputed that she has standing to assert privilege with respect to advice she received to defend against Devon and Steven's claims.

14

[* 14]

*Greenberg Traurig LLP*, 133 AD3d at 58 [determining whether attorney communication relates to advice concerning litigation as opposed to concerning past or prospective actions ordinarily requires in camera review]). The parties' remaining disputes—which boil down to the nature of specific communications—are referred to the Referee for determination after an in camera review, if necessary.

*Waiver of the Privilege by Keiko: "At Issue" Waiver of Attorney Client-Privilege*

Even if the attorney-client privilege here had not been waived—to the extent explained above—by the Interim Successor Trustee, Keiko's privilege arguments concerning some of her communications with Schulte fail for another reason: she has waived the privilege by asserting advice of counsel as a defense. In this regard, Devon and Steven maintain that, as to the six subjects of advice referred to above and listed in their discovery demands and the Schulte Subpoena, Keiko waived the privilege by placing at issue the advice she received from Schulte.[11]

In response, Keiko makes several arguments. She maintains that, since 2019, CPLR 4503(a)(2)(A)(iii) has expressly provided that personal representatives do not waive the privilege of their communications with their lawyers by asserting advice of counsel as a defense. Keiko also argues, as noted previously, that her invocation of this defense did not include her communications with attorneys from Schulte, which firm she claims was retained to represent her as Trustee in adversarial proceedings with Devon and Steven and that such representation was not related to her management of BOT. As support for this argument, Keiko relies on the language of her retainer agreement with Schulte, which states that the firm was hired "to represent and advise [Keiko] in connection with the administration of the Hiroaki Aoki Trust and

---

11 With respect to advice concerning the Minor Transaction in particular, Devon and Steven assert that Keiko also placed at issue the advice of Cowan and seek in their motion to compel Keiko to comply with their request for her communications with that firm.

15

related litigation." Keiko's arguments are unavailing.

It is well established that when a party affirmatively puts the advice of her counsel "at issue," such as Keiko has here as a defense to acts offered as the basis for her removal and surcharge as Trustee, the privilege is waived as to the subject matter involved (*see e.g. Village Bd. of Vil. of Pleasantville v Rattner*, 130 AD2d 654, 655 [2d Dept 1987]; *Matter of Stenovich v Wachtell, Lipton, Rosen & Katz*, 195 Misc 2d 99, 109 [Sup Ct, NY County 2003]). In that circumstance, invasion of the privilege is permitted or even required in order to ascertain the validity of the claim of the party asserting the privilege (*see Nomura Asset Capital Corp. v Cadwalader, Wickersham & Taft LLP*, 62 AD3d 581, 582 [1st Dept 2009]). A party relying on such a defense may not "cherry pick" those attorney communications that support its position and withhold those that do not if they are within the subject matter for which the privilege was waived (*see Metropolitan Bridge & Scaffolds Corp. v New York City Hous. Auth.*, 168 AD2d 569, 572 [1st Dept 2019] [prohibiting self-serving selective disclosure of privileged communications]; *Melcher v Apollo Med. Fund Mgmt. LLC*, 37 AD3d 217 [1st Dept 2007] [noting that disclosure of only selected portions of communications most beneficial to a party's position is not permitted]).

The 2019 amendment to CPLR 4503 on which Keiko relies (L 2019, ch 529, §1) does not, as she contends, eliminate all "at issue" waivers of the attorney-client privilege whenever a fiduciary interposes advice of counsel as a defense. That amendment added subsection 4503(a)(2)(A)(iii) which states: "The fiduciary's testimony that he or she has relied on the attorney's advice shall not by itself constitute such a waiver." As the amendment's legislative history establishes, this subsection was added to the statute to "make[] clear" that a fiduciary does not waive the attorney-client privilege by "merely" asserting that he or she relied on

16

[* 16]

attorney advice (Introducer's Memorandum in Support, Bill Jacket, L 2019, ch 529, at 7).

Further, nothing found in the Bill Jacket for the 2019 amendment—including the statement in support by the Unified Court System, Office of Court Administration which, acting on behalf of the Chief Administrative Judge and pursuant to the recommendation of his Surrogate's Court Advisory Committee, requested the introduction of this amendment—suggests that it was intended to preclude future affirmatively asserted "at issue" waivers or in any way displace the usual rules of waiver incorporated into subdivision [a][1] of the statute. To the contrary, the letter from Senator James F. Gaughran, the amendment's Introducer, to the Governor urging favorable executive action, emphasizes that "[t]his change will provide judges with discretion to make determinations as to whether such [advice of counsel] assertions lends [sic] to a waiver of privilege based on the facts of the individual case" (Letter from Senator Gaughran to Governor Andrew Cuomo, Bill Jacket, L 2019, ch 529, at 5). Far from insulating fiduciaries from "at issue" waivers of attorney-client privilege, as Keiko argues, CPLR 4503, as amended, leaves it to the courts to determine whether there has been a waiver and, if so, the extent to which the privilege has been waived.

Nor has Keiko met her burden of establishing that the Schulte communications were not within the subject matter of her advice-of-counsel waiver. Devon and Steven established that these communications concern matters that she put "at issue" in her defense to removal and surcharge and, in particular, her defense regarding the BOT-BI Cases. Specifically, Devon and Steven provide numerous examples from Schulte's billing records (which are addressed to the Trust "c/o Ms. Keiko Ono Aoki, Trustee") that belie her contention that the scope of Schulte's representation was limited to adversarial proceedings with the Trust's beneficiaries. For example, an entry on June 8, 2017, indicates that Schulte attorneys were conferring with each

17

other "re contempt hearing [involving a contempt application filed by BI against BOT regarding a Federal Court injunction in the BOT-BI Cases]" and that some of those lawyers then had a telephone conversation with Manson [BOT's attorney] "re same." Another entry from June 15, 2017, shows that Schulte lawyers billed for "participat[ing] in meetings with J. Manson and K. Aoki regarding contempt order and status of surrogate's court proceedings." A third entry, dated June 20, 2017, states: "Call with J. Manson regarding contempt hearing, location of various files, and update on other proceedings; send email summarizing conversation to team; draft talking points for meeting with K. Aoki."[12] These entries as well as many others in this record provide ample grounds to conclude that Schulte played a role in advising Keiko in the BOT-BI Cases. Such advice is thus within the subject matter of Keiko's at-issue waiver and communications reflecting this advice must be disclosed.

The conclusion that Keiko waived the attorney-client privilege attached to the Schulte communications is also grounded on the well-established principle that a trustee who controls a business wholly owned by her trust, such as BOT here, cannot use the business form to shield her actions from scrutiny and is accountable for the administration of the affairs of the company

---

12 Schulte's involvement in the transactions forming the alleged grounds for Keiko's removal and Devon and Steven's accounting objections illustrated by these entries was not an isolated instance. Schulte's time records also provide:

"06/16/17. Draft summary of conversations with J. Manson and K. Aoki."

"06/22/17. TC with J. Manson and W. Zabel re Contempt Hearing results, settlement strategies, and next steps."

"06/23/17. T/Cs Manson re Keiko; summarize settlement proposal w/J. Ro; t/c Manson."

"07/18/17. Reviewed file and drafted talking points re structure of settlement with BI."

"07/19/17. Conferred with W. Zabel and J. Opheim re strategies for reaching out to Angelo Gordon [Angelo Gordon is the investment firm whose affiliate owns BI]."

"07/22/17. Emails with J. Opheim re Angelo Gordon and settlement."

"07/25/17. [D]raft email to K. Aoki regarding call and proposed response to proposal set forth in call with A. Fein [counsel to BI]."

"08/15/17. Conferred with J. Bentley re potential sale of BOT."

"11/16/17. Conferred with T. Jennings and J. Opheim re settlement strategies. TC with J. Manson, T. Jennings and J. Opheim re same."

"11/16/17. Calls with WDZ, KOA [Keiko] re: settlement and business strategy."

"02/20/18. Call with Joe Manson re: BOT/BI litigations."

18

[* 18]

as trustee (*see e.g. Matter of Hubbell*, 302 NY 246 [1951]; *Matter of Shehan*, 285 App Div 785, 793 [4th Dept 1955]; *Matter of Scuderi*, 247 AD2d 392, 393 [2d Dept 1991]; *Matter of Schulman*, 165 AD2d 499, 502 [3d Dept 1991]). In other words, Keiko and her decisions as CEO of BOT are subject to inquiry and discovery in the context of the removal and accounting proceedings. She placed advice of counsel at issue in defending against the claims of Devon and Steven and the GAL in those proceedings and, as a result, is not entitled to withhold disclosure of the advice she received from her counsel as Trustee concerning those matters.

In sum, because Keiko specifically interposed as a defense in opposition to summary judgment that her good faith in managing BOT, and in particular her litigation decisions concerning the BOT-BI Cases, could be established by attorney communications, she should not be allowed to "cherry pick" which of those communications she put "at issue." Additionally, Keiko cannot assert advice of counsel as a defense to efforts to remove *as Trustee* and surcharge her while also claiming that the scope of the waiver premised on such defense is limited only to advice received by her as CEO of BOT. As a result, advice Keiko received from her counsel concerning the BOT-BI Cases or concerning any other action *vis-a-vis* BOT (including the other five subjects identified in the Schulte Subpoena and Devon and Steven's discovery demands)[13] is discoverable.

This determination, however, does not preclude Keiko from asserting privilege with respect to advice she received to defend herself in the proceedings in this court against the claims of Devon and Steven and the GAL to the extent that such advice was not provided to guide her in

---

13 As to the Minor Transaction in particular, Keiko placed the advice of the Cowan firm at issue, and she has also conceded that the firm represented BOT, in addition to her as Trustee. Communications with that firm are thus discoverable. To the extent that Keiko asserts privilege with respect to the advice she received from Cowan, if she has not done so yet, she must list the specific communications she seeks to withhold in her privilege log. Consistent with the rulings here, disputes concerning Keiko's privilege assertions related to the Cowan communications are referred to the Referee.

19

the ongoing administration of the Trust's assets. All the Schulte communications that Keiko seeks to withhold on this ground shall be included in a privilege log and the basis for any privilege assertion indicated. Disputes concerning whether communications fall into this category are referred to the Referee for determination after an in camera review, if necessary.

Privilege of the Schulman Communications

In her privilege log, Keiko claimed privilege with respect to communications with Schulman, which fall into three categories: a) representation and advice in a trademark violation action filed by BI against BOT and Keiko individually in federal court; b) legal actions commenced by Manson against BOT and/or Keiko for the payment of his fees (the Manson Actions); and c) "Surrogate Court Proceedings." Some of the identified communications are between Keiko and Schulman lawyers and some are between her, Schulman lawyers and Schulte lawyers. Some of the communications between Keiko and Schulman lawyers are described in the log as "reflecting" discussions with Schulte. It is unclear from these descriptions whether the communications concern administration of the Trust or BOT or adversarial proceedings with Devon and Steven, or both. As to some communications, Keiko invokes the common interest exception to waiver of attorney-client privilege (*see generally Ambac. Assur. Corp. v Countrywide Home Loans, Inc.*, 27 NY3d at 620 [communications with counsel disclosed to third party remain privileged if third party shares a common legal interest with client and communication is made "in furtherance" of that legal interest]).[14]

Devon and Steven maintain that withholding such communications from disclosure is

---

14 The parties further argue about the applicability here of what are called the "*Nunan* factors" for analyzing whether a corporate employee may claim privilege as to communications with corporate counsel, *i.e.*, whether the employee may claim privilege as an individual even though the lawyer was retained by the corporation (*see Nunan v Midwest, Inc.*, 11 Misc 3d 1052(A), 2006 NY Slip Op 50188[U], n 4 [Sup Ct, Monroe County 2006]). However, because it is clear from the retainer agreement with Schulman that Keiko was a client of the firm in her individual capacity in addition to her capacity as CEO of BOT, the court need not reach this issue.

20

improper because they are within Keiko's at-issue waiver or, inasmuch as Keiko received this advice as CEO of BOT, the privilege does not belong to Keiko. For her part, Keiko relies on her retainer agreement with Schulman to argue that she hired the firm to represent not only BOT but also to represent her in her individual capacity and that she has not waived her privilege as to these communications.

Keiko's claims of individual representation regarding the Schulman communications related to the trademark litigation by BI and the Manson Actions (in which she had been sued in her individual capacity) are difficult to assess without reference to particular documents or communications and should be reviewed in camera by the Referee. Keiko must also provide to the Referee communications that she describes as related to "Surrogate Court Proceedings," even if she claims they are protected attorney work-product. To the extent the Referee determines that a communication in any of these three categories is solely referrable to advice to Keiko individually, it should be withheld.[15] However, to the extent the Referee determines that advice Keiko received overlaps partially or wholly with the advice provided to BOT by Schulman, and is within the subject matter waiver of Keiko's advice of counsel defense, communications reflecting such advice should be disclosed.

Finally, to the extent that any of the Schulman communications relate to advice provided to BOT and Keiko in connection with a demand for arbitration that Keiko and BOT contemplated filing against Manson, those communications should be disclosed because Keiko placed the advice of Manson "at issue" in these proceedings.

---

15 The Referee might find that any communication should be withheld on other privilege grounds and the court's conclusion here does not preclude the Referee from so finding.

## CONCLUSION

For the reasons discussed above, Keiko is directed to amend her privilege log to list all communications with the Schulte and Cowan firms over which she is asserting privilege, specifying in what capacity she received the advice reflected in the communication and whether the advice she received did or did not relate to the ongoing administration of the Trust or its assets, including BOT. If Keiko claims that the advice related to a court proceeding or action, she must indicate for each such entry the particular court proceeding or action for which attorney advice was given. Keiko is further directed to turn over to Devon and Steven's counsel and the GAL all communications with the Schulte, Cowan and Schulman firms as to which, in accordance with this Decision, privilege may not be asserted. Finally, Keiko is directed to deliver to the Referee the communications[16] with those firms as to which she continues to claim privilege regardless of the guidance provided by the court here. Such production—whether to Devon and Steven's counsel or to the Referee—must take place no later than May 21, 2024.

Accordingly, in the first set of cross-motions, Keiko's motion for a protective order and to quash the Schulte Subpoena as well as Devon and Steven's cross-motion to compel the production of the Schulte and Cowan communications are granted to the extent explained above. Devon and Steven's motion to compel Schulte to designate a witness to be examined concerning Keiko's communications with that firm is referred to the Referee to determine, upon his review of the documents, whether such examination is warranted or necessary to assist him in his work. In the second set of cross-motions, Devon and Steven's motion to compel production of the Schulman communications is also granted to the extent explained above.

---

16 The Referee may choose to request that only a representative sample of communications in any category be

22

This decision constitutes the order of the court.

Clerk to notify.

Dated:   April 12, 2024

_____
S U R R O G A T E

provided to him for in camera review.